PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

MLC AUTOMOTIVE, LLC; LEITH OF
FAYETTEVILLE, INCORPORATED,
            *Plaintiffs-Appellees,*

v.

THE TOWN OF SOUTHERN PINES;
SOUTHERN PINES TOWN COUNCIL;
FRANK QUIS; DAVID WOODRUFF; FRED
WALDEN; CHRISTOPHER SMITHSON;
MIKE HANEY,
            *Defendants-Appellants.*

No. 07-2039

Appeal from the United States District Court
for the Middle District of North Carolina, at Greensboro.
N. Carlton Tilley, Jr., District Judge.
(1:05-cv-01078-NCT)

Argued: May 14, 2008

Decided: July 3, 2008

Before WILLIAMS, Chief Judge, NIEMEYER, Circuit Judge, and
Alexander WILLIAMS, Jr., United States District Judge for the
District of Maryland, sitting by designation.

_____

Affirmed by published opinion. Chief Judge Williams wrote the opinion, in which Judge Niemeyer and District Judge Williams joined.

_____

## COUNSEL

**ARGUED:** Susan K. Burkhart, CRANFILL, SUMNER & HARTZOG, LLP, Raleigh, North Carolina, for Appellants. Robin Tatum

Currin, POYNER & SPRUILL, Raleigh, North Carolina, for Appellees. **ON BRIEF:** Edwin M. Speas, Jr., Chad W. Essick, POYNER & SPRUILL, Raleigh, North Carolina, for Appellees.

---

**OPINION**

WILLIAMS, Chief Judge:

The Town of Southern Pines, North Carolina, and its Council (collectively "the Town") appeal the denial of their Federal Rule of Civil Procedure 60(b) motion. That motion argued, in part, that the district court made a mistake in abstaining under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), before the Town filed a timely response to the objections by MLC Automotive, LLC and Leith of Fayetteville, Inc. (collectively "Leith") to a magistrate judge's recommendation that the district court enter summary judgment in favor of the Town on Leith's federal substantive due process claim. The Town also contests the underlying merits of the district court's decision to abstain. We conclude that the district court did not abuse its discretion in abstaining under *Burford* and therefore affirm.

I.

Because the Town's argument hinges on its belief that the district court should have granted its motion for summary judgment, rather than abstaining under *Burford*, we construe the facts in the light most favorable to Leith, drawing all reasonable inferences in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (noting that all evidence must be construed in the light most favorable to the party opposing summary judgment).

Leith owns and operates automobile dealerships throughout North Carolina. In 2000, Leith began researching the possibility of developing an automobile park (the "Auto Park")[1] in the Town. For a parcel of land to serve as the location for the Auto Park, Leith needed certain

---

[1]An automobile park consists of numerous car dealerships at a single location.

requirements to be met: the parcel needed to have at least 20 acres of land with space for four car dealerships; 1200 feet of frontage on a major artery; and permissive zoning. Eventually, Leith found such a parcel located in the Town near the intersection of U.S. Highway 1 and N.C. Highway 2 (the "Property").

In March 2001, Leith entered into a contract to purchase the Property for $1.55 million. Before executing the purchase agreement, Leith obtained written determinations from the Town that the Property was zoned as "GB," or General Business. Since at least 1989, the Town's Unified Development Ordinance ("the Ordinance") has provided that "Motor Vehicle and Boat Sales or Rental or Sales and Service" are permitted in areas zoned GB. (J.A. at 1236.) Confirmation was proved by Joy Richards, a zoning officer for the Town:

> This letter is to advise that a car dealership can be located in the General Business District as long as it can meet all zoning requirements, such as setbacks, landscaping, parking, etc.

(J.A. at 354.) On November 30, 2001, the Town provided Leith an additional written confirmation that an Auto Park would be in compliance with zoning ordinances. In reliance on these notifications and the Ordinance, Leith closed on the Property in January 2002 for a total sale price of $1,553,904.

Shortly thereafter, Leith began negotiating with American Suzuki Motor Corporation to establish a Suzuki franchise on the property. In January 2005, Leith and Suzuki entered into a binding letter of intent ("LOI"), which provided that Leith could hold the Suzuki franchise right for developing a dealership on the Property if Leith met certain obligations.

In December 2004, Leith began incurring expenditures in anticipation of building on the Property, and in January 2005, one of Leith's engineers met with the Town Planning Director to confirm that the property was zoned "GB" and that the Auto Park was a permitted use as a matter of right in the GB zone. Leith would, however, have to obtain several permits, including an architectural compliance permit, from the Town Council before receiving an actual building permit.

The requirements were compiled in a "checklist" that the Town provided to Leith, which listed a total of thirteen steps a building contractor had to take before a building permit would issue. Leith was not required to obtain the checklist requirements in any particular order and chose to first pursue the architectural compliance permit.

Leith filed an architectural compliance permit application on March 17, 2005 and presented its Suzuki dealership design to the Council on April 6, 2005. The Council and the Town's Mayor both expressed dissatisfaction with Leith's proposed design and informed Leith that the Council would not approve the architectural compliance permit until Leith changed the design.[2]

Leith re-presented its architectural compliance permit on June 8, 2005 during a Council agenda meeting. Leith received positive feedback on its new design, and it expected that its architectural compliance permit would be granted at the next Council meeting. Community interest in the proposed Auto Park was growing, however, and at the next Council meeting, the minutes indicate that "[m]any residents spoke in opposition" to the Auto Park and asked the Council to rezone the Property and "fight" Leith. (J.A. at 355.) The Council failed to act on Leith's architectural compliance permit application at that meeting, and at its next meeting in July. On July 29, 2005, residents filed a request to rezone the Property to "Office Services" ("OS"), which would not permit an automobile dealership. This request was the first zoning request since at least 1989 filed in the Town by a landowner seeking to rezone the property of another landowner.

During an August 9, 2005 Council meeting, residents appeared and filed a petition urging the Town to "take the property by eminent domain and use the land to build a [recreational] park that can be used by citizens." (J.A. at 426.) Residents further stated that they would move if the "obnoxious auto mall" was permitted. (J.A. at 427.) The

[2]Before granting an architectural compliance permit, the Town Council is supposed to find that the proposed development would be "visually harmonious with the overall appearance, history and cultural heritage of Southern Pines and demonstrate the Town of Southern Pines' character." (J.A. at 350 (quoting the Ordinance § 185.2(a)(2)).)

Council again postponed making a decision on Leith's architectural compliance permit application at this meeting.

The Council eventually approved Leith's architectural compliance permit application on September 13, 2005 by a vote of three to two. Leith's architectural compliance permit application took six months to be granted. By comparison, the average architectural compliance permit application was decided at the first Council meeting after its filing and, prior to Leith's application, the longest turnaround time had been two to three months.

By this time, however, residents had also requested an amendment to the Ordinance to otherwise prohibit Leith's intended land use. Less than a month after granting Leith's architectural compliance permit, on October 11, 2005, the Town rezoned the property OS, thereby preventing Leith from fulfilling their obligations under the LOI with Suzuki and effectively ending Leith's bid to build an Auto Park. The minutes from the October Town Council meeting do not discuss reasons for the change in zoning, save resident opposition. It is also undisputed that, as noted earlier, prior to the rezoning, an Auto Park had been a permitted use on the Property since at least 1989. In addition, in 2002 the Town Council had performed a study of appropriate uses for property along the U.S. Highway 1 corridor and had removed certain permitted uses, but not automotive dealerships.

Moreover, under North Carolina law, "[z]oning regulations shall be made in accordance with a comprehensive plan." N.C. Gen. Stat. § 160A-383 (2007). Thus:

> When adopting or rejecting any zoning amendment, the governing board shall also approve a statement describing whether its action is consistent with an adopted comprehensive plan and any other officially adopted plan that is applicable, and briefly explaining why the board considers the action taken to be reasonable and in the public interest.

*Id.*

In order to comply with § 160A-383, the Town developed the Southern Pines Land Development Plan. However, the Town did not

review the Plan in making its decision to rezone the Property OS, and it did not perform any studies as to what zoning might be most appropriate for the Property.

In explaining the rationale for the decision to rezone the Property, the Town Manager testified that, prior to that decision, he was instructed to "find the best way to stop [the Auto Park]." (J.A. at 305.) In July, the Town Manager sent the following email to a member of the Town Council:

> The Mayor and I spoke earlier, and my suggestion is that if we (the Council) wish to pursue stopping this then a meeting with [the Town's Attorney] needs to take place and a game-plan developed. I would suggest that the Architectural review is probably NOT the "line in the sand" that we draw, but instead maybe the Zoning permit language you suggest . . . . Willing to discuss the architectural review possibilities with [the Town Attorney], but given how far they have come and the code we work with I question the strength of our position come time to defend. Strategically, we need to consider the merits of running with our strongest argument versus throwing small (and legally surmountable) road-blocks in the way all throughout the process.

(J.A. at 380.)

Discussing the actual rezoning decision, the Town Manager testified that it was "a reaction to an application filed by a group of citizens," (J.A. at 299), and the Mayor likewise told Linda Leith, the Chief Financial Officer of Leith, that "residents of the neighborhoods had put tremendous political pressure on h[im] and on the Board members," (J.A. at 186). The record is replete with resident complaints regarding the possible Auto Park. One resident stated, "I want you to remember one other thing. These senior citizens vote, they don't stay home." (J.A. at 1082.) Another emailed the Town Council in July, stating "[w]e here in Southern Pines would be 100% behind you if you just told Leith to go away and we'll see you in court." (J.A. at 382.)

In this same vein, the Town Planning Director testified, in response to the question of why the Property was not rezoned at any point prior

to its purchase by Leith, "[t]he only change that I know of is that the applicants [in favor of rezoning] were . . . property owners that lived near the property, and certainly the Council listened to that." (J.A. at 270.) Linda Leith testified that during one meeting with the Town Council she was told "the last thing they wanted was to have a cheesy car dealership with a giant gorilla on the roof be the first thing in their gateway community" and that the Town Council would prefer the dealership "down with the other car dealerships on cheeseburger alley." (J.A. at 184.) In accord with this assertion, one citizen emailed the Mayor, "A dealership is a dealership is a dealership. Lipstick on a pig does not change the nature of the beast. . . . God help the immediate neighbors, the reputation of Southern Pines as a place to live, and the compromised reputation of a mayor and a council who didn't have the guts to say NO." (J.A. at 382.)

Leith asserts that, in total, it expended $2,072,060 towards developing the Auto Park from 2001 through October 11, 2005.

On December 9, 2005, Leith filed suit against the Town, the Town Council, and the Council's individual members in the United States District Court for the Middle District of North Carolina. Leith's complaint alleged that the Town's rezoning of the Property violated its common law vested rights in the Property and its federal and state substantive due process rights. Leith concedes that its federal substantive due process claim is dependent upon a finding that Leith had a common law vested right in the Property as previously zoned. Leith's complaint also alleged state law claims for tortious interference with contract and tortious interference with prospective economic advantage. Leith requested, *inter alia*, a declaratory judgment that it possessed a vested right in the previous zoning, an injunction against the Town barring its enforcement of the new zoning against Leith, and monetary damages in excess of $10,000,000.

The case was referred to a magistrate judge and, following discovery, on May 15, 2007, the magistrate judge recommended granting summary judgment in favor of the Town on Leith's substantive due process claim and declining to exercise supplemental jurisdiction over Leith's four state law claims.

On June 4, 2007, Leith timely filed objections to the magistrate judge's recommendation. Before the Town responded to these objections, the district court, on June 19, 2007, *sua sponte* entered an order and "stayed [the case under *Burford*] pending the resolution of the land use and zoning issues in state courts."[3] (J.A. at 2452.)

The district reasoned as follows:

> This case is not one involving a genuine and independent federal claim. The federal claim in this case is inextricably woven with the state common law vested rights claim. The issue of whether Leith was denied its substantive due process rights in violation of 42 U.S.C. § 1983, which involves the interpretation of state land use and zoning laws, is more appropriately heard in state court. In addition, there are no "exceptional circumstances" present to warrant this Court leaving its "indelible print on local and state land use and zoning law . . . and, in effect, sitting as a zoning board of appeals."

(J.A. at 2455-56 (quoting *Pomponio v. Fauquier County Bd. of Supervisors*, 21 F.3d 1319, 1327 (4th Cir. 1994) (en banc), *overruled in part on other grounds by Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728-31 (1996)).)[4]

Two days later, the Town moved to vacate the stay order under Federal Rule of Civil Procedure 60(b)(1) and 60(b)(6), which authorize relief from a final order for "mistake, inadvertence, surprise, or excusable neglect" and for "any other reason that justifies relief," respectively. Fed. R. Civ. P. 60(b)(1),(6). Specifically, the Town

---

[3]Because Leith's complaint requested damages under 42 U.S.C.A. § 1983 (West 2003), the district court correctly stayed the matter rather than dismissing it. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 730 (1996) (explaining that "a federal court cannot, under *Burford*, dismiss or remand an action when the relief sought is not discretionary").

[4]At the time the district court entered this order, there was no pending proceeding in state court. Leith informs us, however, that on October 18, 2007 it initiated an action in Moore County Superior Court seeking relief on its state law claims.

argued that the district court was mistaken in its earlier order in noting that the Town "did not respond" to Leith's objections to the magistrate judge's recommendation because the time to file a response had yet to run. (J.A. at 2459.) The Town further argued that, had the district court waited for the Town's filing, the district court would have concluded that summary judgment was appropriate and would not have abstained under *Burford*. In the alternative, the Town contended that "the entry of the Order prior to the Court's review of the [Town's] Response constitutes extraordinary circumstances . . . in that Defendants were not afforded a full and fair resolution of the summary judgment issues, which also control the *Burford* abstention issue."[5] (J.A. at 2459-60.)

On September 14, 2007, the district court denied the Town's Rule 60(b) motion. It first concluded no mistake occurred under Rule 60(b)(1) because "[t]he abstention issue . . . was raised by the Court *sua sponte*," so that "the misstatement in the order [i.e., that the Town had failed to file a response] is inconsequential and offers no basis for relief under Rule 60(b)(1)." (J.A. at 2540.) The district court also reviewed the Town's arguments regarding the propriety of *Burford* abstention and rejected them, concluding, "[f]or the reasons stated above and for the reasons stated in the June 19 Memorandum Order, it is determined that abstention in this matter is appropriate and that the Town's Verified Motion for Relief from Order Staying Case should be DENIED." (J.A. at 2545-46.) On October 12, 2007, the Town filed its appeal only of the district court's September 14, 2007 order, and we possess jurisdiction under 28 U.S.C.A. § 1291 (West 2006).

## II.

On appeal, the Town urges us to reverse the district court's decision to abstain under *Burford* and to remand the case for consideration of its summary judgment motion. Before reaching this issue, however, we must discern the scope of our review. Typically, we review a district court's decision to abstain under *Burford* for abuse

---

[5]A motion under Federal Rule of Civil Procedure 60(b)(6) may not be granted absent "extraordinary circumstances." *Reid v. Angelone*, 369 F.3d 363, 370 (4th Cir. 2004) (internal quotation marks omitted).

of discretion. *Martin v. Stewart*, 499 F.3d 360, 363 (4th Cir. 2007). The Town, however, did not include the district court's original order exercising *Burford* abstention in its notice of appeal. Instead, the Town chose to appeal only the district court's denial of its Rule 60(b) motion.

We also review the denial of a Rule 60(b) motion for abuse of discretion, *CNF Constructors, Inc. v. Donohoe Constr. Co.*, 57 F.3d 395, 401 (4th Cir. 1995) (per curiam), but in so doing, we "may not review the merits of the underlying order; [we] may only review the denial of the motion with respect to the grounds set forth in Rule 60(b)," *In re Burnley*, 988 F.2d 1, 3 (4th Cir. 1993) (per curiam). This scope of review causes some difficulty for the Town, which urges us to consider the merits of the district court's ruling granting abstention.

Fortunately for the Town, however, it filed its Rule 60(b) motion only two days after the district court's June 19 order. And, we have previously explained:

> While not condoning the misstyling of motions, we nonetheless agree that if a post-judgment motion is filed within ten days of the entry of judgment and calls into question the correctness of that judgment it should be treated as a motion under Rule 59(e), however it may be formally styled.

*Dove v. CODESCO*, 569 F.2d 807, 809 (4th Cir. 1978).

The Town's filing in this case satisfies this standard, for it was filed within ten days of the district court's order and called into question the correctness of that order.

In reaching this conclusion, we note that *CODESCO* was decided under a prior version of the Federal Rules of Appellate Procedure ("FRAP"). Prior to 1993, the FRAP provided that a properly filed Rule 59 motion stayed the time to appeal the underlying order, but a Rule 60(b) motion did not. The *CODESCO* rule thus "was not designed to constrain a district court's substantive analysis of a post-judgment motion. Rather, it was devised for purposes of appellate review under a previous version of Fed. R. App. P. 4(a)." *Jennings*

*v. Rivers*, 394 F.3d 850, 855 (10th Cir. 2005); *see also Derrington-Bey v. D.C. Dep't of Corrs.*, 39 F.3d 1224, 1226 n.† (D.C. Cir. 1994) (same).

In 1993, however, FRAP 4 was amended and now provides:

> (A) If a party timely files in the district court any of the following motions under the Federal Rules of Civil Procedure, the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion:
>
> . . .
>
> (vi) for relief under Rule 60 if the motion is filed no later than 10 days after the judgment is entered.

Fed. R. App. P. 4(a)(4)(A)(vi).

The notes to the amended FRAP 4 explain:

> This [amendment] eliminates the difficulty of determining whether a posttrial motion made within 10 days after entry of a judgment is a Rule 59(e) motion, which tolls the time for filing an appeal, or a Rule 60 motion, which historically has not tolled the time. The amendment comports with the practice in several circuits of treating all motions to alter or amend judgments that are made within 10 days after entry of judgment as Rule 59(e) motions for purposes of Rule 4(a)(4).

Fed. R. App. P. 4(a)(4) advisory committee's note.

Thus, a motion filed within ten days of the original judgment need not be considered a Rule 59 motion in order to preserve appellate review of the underlying order. Other circuits have recognized this change and now label a motion as one under 59(e) or 60(b) "based on the reasons expressed by the movant, not the timing of the motion." *Jennings*, 394 F.3d at 855; *see also Obriecht v. Raemisch*, 517 F.3d 489, 493 (7th Cir. 2008) (noting "[n]either the timing of the

motion, nor its label . . ., is dispositive with respect to the appropriate characterization of the motion."); *Derrington-Bey*, 39 F.3d at 1226 n.† (noting earlier approach "mooted" by amended FRAP 4).

We, however, have continued to cite and apply *CODESCO* following the amendment to FRAP 4. *See generally Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 573 n.2 (4th Cir. 2004) (noting that because the party "filed the motion within 10 days after the order was entered, the district court should have considered it under Rule 59(e)"). While we believe this approach is no longer appropriate,[6] "[a]s a panel, we cannot overrule a prior panel and 'are bound to apply principles decided by prior decisions of the court to the questions we address.'" *R.R. ex rel. R. v. Fairfax County Sch. Bd.*, 338 F.3d 325, 332 n.6 (4th Cir. 2003) (quoting *Under Seal v. Under Seal*, 326 F.3d 479, 484 (4th Cir. 2003)).

Thus, we are bound to conclude that the Town's June 21 motion should have been treated as a Rule 59(e) motion. And, although the Town's notice of appeal referred only to the denial of that motion, "[e]very circuit court to address the question has held that designation of a postjudgment motion in the notice of appeal is adequate to support a review of the final judgment when the intent to do so is clear." *Brown v. French*, 147 F.3d 307, 311 (4th Cir. 1998); *see also Lolavar v. de Santibanes*, 430 F.3d 221, 224 (4th Cir. 2005) (rejecting argument that notice of appeal was limited to Rule 59(e) motion and noting that "because the case has been briefed and argued upon the merits of the underlying orders of the district court, we do not ground this decision upon any such argument and will consider the appeal as being from the underlying judgment as well as the motion to alter or amend the judgment"); *Va. Dep't of State Police*, 386 F.3d at 574 n.4 (same).

Moreover, in discerning that intent, we "should be liberal in passing on the sufficiency of a notice of appeal." *Gunther v. E.I. du Pont De Nemours & Co.*, 255 F.2d 710, 717 (4th Cir. 1958). *See also Nat'l*

---

[6]In particular, we find the approach confusing given that "[t]he differences between the two rules are substantial and affect what evidence can be considered and what law controls." *Zinkand v. Brown*, 478 F.3d 634, 636 (4th Cir. 2007).

*Ecological Found. v. Alexander*, 496 F.3d 466, 477 (6th Cir. 2007) (reaffirming that appeal of only the denial of a Rule 59(e) motion preserves appellate review of any prior orders so long as parties "fully argued the merits of the prior orders"); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 618 (6th Cir. 2002) ("While Plaintiff stated in her notice that she was 'tak[ing] an appeal from' the July 19, 2000 denial of the motion to amend, it is abundantly clear to us that Plaintiff sought our review of the district court's April 11, 2000 dismissal order as well. Both parties fully briefed us on their views of the propriety of the dismissal and dedicated the majority of their time at oral argument to presenting their respective positions on the sufficiency of Plaintiff's pleadings."); *Indep. Petroleum Ass'n of Am. v. Babbitt*, 235 F.3d 588, 593 (D.C. Cir. 2001) (noting that "a party may demonstrate its intention to appeal from one order despite referring only to a different order in its petition for review if the petitioner's intent can be fairly inferred from the petition or documents filed more or less contemporaneously with it," and that "without a showing of prejudice by the appellee, technical errors in the notice of appeal are considered harmless" (internal quotation marks omitted)); *Lowrance v. Achtyl*, 20 F.3d 529, 533 (2d Cir. 1994) (noting that "because the magistrate judge's action was effectively to reaffirm or to modify its March 10 judgment of dismissal after reconsideration of the merits, the June 14 notice referring to the denial of reconsideration referred to the entire judgment"); *cf. Foman v. Davis*, 371 U.S. 178, 181 (1962) (finding notice of appeal effective in attempting to appeal underlying judgment where both parties briefed underlying judgment's correctness and the appellee was not prejudiced and noting "[i]t is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities"); *Basic Controlex Corp. v. Klockner Moeller Corp.*, 202 F.3d 450, 452 (1st Cir. 2000) (noting that the "notice of appeal challenged only the district court's denial of the Rule 59(e) motion," but rejecting Basic Controlex's claims under *de novo* review, rather than under an abuse of discretion standard, because "the issues raised in both the motion and on this appeal are purely legal, to a large extent repetitive of Basic Controlex's summary judgment arguments, and unpersuasive even under a *de novo* standard of review").

In this case, the Town and Leith both briefed the issue of *Burford* abstention, and oral argument revolved almost solely around the dis-

trict court's decision to abstain. Thus, we think it clear that the Town intended to appeal the district court's June 19 order and that Leith has not been prejudiced by the Town's failure to specifically note that order in its notice of appeal.[7]

To summarize, the Town's Rule 60(b) motion was filed within ten days of the original judgment and called into question the correctness of that judgment and is properly construed as a Rule 59(e) motion. And, the Town's notice of appeal, while referencing only the denial of that later motion, nonetheless preserved appellate review of the underlying judgment. We therefore turn to the question of whether the district court abused its discretion in staying the case under *Burford* abstention.

### III.

### A.

We review the district court's decision to abstain under *Burford* for abuse of discretion, ever mindful that, although the standard is a "deferential one," *First Penn-Pacific Life Ins. Co. v. Evans*, 304 F.3d 345, 348 (4th Cir. 2002), the discretion to abstain is tempered by the truism that "the federal courts have a virtually unflagging obligation to exercise their jurisdiction," *Deakins v. Monaghan*, 484 U.S. 193, 203 (1988) (internal quotation marks omitted). *See also Quackenbush*, 517 U.S. at 716 (noting that "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress"). Abstention "remains the exception, not the rule," and the Supreme Court, in order to safeguard this principle, has "carefully defined . . . the areas in which such abstention is permissible." *New Orleans Pub. Serv., Inc. v. Council of New Orleans ("NOPSI")*, 491 U.S. 350, 359 (1989) (internal quotation marks omitted). "'[T]here is little or no discretion to abstain in a case which does not meet traditional abstention requirements.'" *Martin*, 499 F.3d at 363 (quoting *Dittmer v. County of Suffolk*, 146 F.3d 113, 116 (2d Cir. 1998)).

---

[7]A contrary decision would be particularly harsh in this case, given the Town's mistaken, but good faith, belief that the district court's September 14 order was an amendment of its earlier order.

Federal courts should abstain from deciding cases presenting "'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar,'" or whose adjudication in a federal forum "'would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *NOPSI*, 491 U.S. at 361 (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976)). There is no "formulaic test" for *Burford* abstention, *Quackenbush*, 517 U.S. at 727, and, "[a]lthough [the] doctrine has many different forks and prongs, [abstention's] central idea has always been one of simple comity," *Johnson v. Collins Entm't Co.*, 199 F.3d 710, 718-19 (4th Cir. 1999). Thus, the "Supreme Court has admonished the federal courts to respect the efforts of state governments to ensure uniform treatment of essentially local problems." *Id.* at 719. As we have explained, although "abstention from the exercise of federal jurisdiction is the exception, not the rule, its importance in our system of dual sovereignty cannot be underestimated." *Id.* (internal quotation marks, citation, and alteration omitted). We must "exercise [our] discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy." *Burford*, 319 U.S. at 318 (internal quotation marks omitted).

### B.

The Town raises two arguments in favor of its contention that the district court abused its discretion in abstaining. First, the Town argues that no issues of state law are presented because, even if Leith does have vested rights in the Property, it still cannot establish a violation of its substantive due process rights. The Town notes that, had the district court simply granted summary judgment as to the substantive due process claim, the vested rights claim still would be resolved in state court. Second, the Town contends that, even if a federal court had to weigh Leith's vested rights claim, that claim does not involve difficult questions of state law bearing upon important public policy. We address each in turn.

### i.

The Town first argues that summary judgment was appropriate regardless of the resolution of Leith's vested rights claim. Because an

error of law amounts to an abuse of discretion, *see Martin*, 499 F.3d at 363, we agree with the Town that, if summary judgment was appropriate on Leith's substantive due process claim, *Burford* abstention would not be. We review *de novo* a district court's grant of summary judgment. *Wilmington Shipping Co. v. New England Life Ins. Co.*, 496 F.3d 326, 331 (4th Cir. 2007). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As noted above, we construe the facts in the light most favorable to Leith and draw all reasonable inferences in its favor. *Anderson*, 477 U.S. at 255.

To establish a violation of substantive due process, Leith must "demonstrate (1) that they had property or a property interest; (2) that the state deprived them of this property or property interest; and (3) that the state's action falls so far beyond the outer limits of legitimate governmental action that *no process* could cure the deficiency." *Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 827 (4th Cir. 1995) (emphasis in original). And in the context of a zoning action involving property, it must be clear that the state's action "has no foundation in reason and is a mere arbitrary or irrational exercise of power having no substantial relation to the public health, the public morals, the public safety or the public welfare in its proper sense." *Nectow v. City of Cambridge*, 277 U.S. 183, 187-88 (1928) (internal quotation marks omitted). In making this determination we may consider, among other factors, whether: (1) the zoning decision is tainted with fundamental procedural irregularity; (2) the action is targeted at a single party; and (3) the action deviates from or is inconsistent with regular practice. *A Helping Hand, L.L.C. v. Baltimore County*, 515 F.3d 356, 373 n.10 (4th Cir. 2008); *see also Scott v. Greenville County*, 716 F.2d 1409, 1419-21 (4th Cir. 1983) (same).

The Town argues that the district court should have granted summary judgment because Leith cannot meet its burden above. In particular, the Town points us to *Sylvia Dev. Corp.*, in which we held that, even if "appeasing the public was the only purpose behind [a permit denial], in the context of this case we still cannot say that the Board's action bore no rational relationship to the exercise of the state's tradi-

tional zoning power." 48 F.3d at 828. In so holding, we further noted that "[z]oning is inescapably a political function." *Id.* We also noted, however, that the public opposition in that case "centered around legitimate land use issues." *Id.* at 829.

In contrast, we believe—taking the evidence in the light most favorable to Leith—summary judgment would not have been appropriate on Leith's substantive due process claim. First, Leith's evidence, taken as true, satisfies all three relevant factors listed in *A Helping Hand* and *Scott*: the zoning decision was procedurally irregular in that it occurred without any reference to the comprehensive plan; Leith was singled out for treatment; and the zoning was made without any studies and at the behest of a citizen petition, the first such petition in the Town since at least 1989. Second, unlike *Sylvia Dev. Corp.*, the record evidence at least suggests that citizenry opposition was based not upon legitimate land use issues but upon dislike of car dealerships. Statements such as "[l]ipstick on a pig does not change the nature of the beast," (J.A. at 382), do not relate to legitimate land use concern but rather to the very arbitrary exercise of power the due process clause is intended to protect against.[8] While Leith may not prevail at trial on its substantive due process claim, its evidence, we believe, is sufficient to survive summary judgment.

Thus, even if we were to assume that Leith had a property interest in building an Auto Park on the Property, issues of fact preclude the granting of summary judgment on Leith's substantive due process claim and we must address whether abstention was appropriate because of the presence of Leith's vested rights claim.

ii.

In its complaint, Leith alleged that it had accrued vested rights in the Property and that the rezoning violated those vested rights as well

---

[8]The Town also argues that Leith could not prevail on a substantive due process claim because, assuming it is found to have a common law vested right, then Leith will have "received the very remedy they sought." *Sunrise Corp. of Myrtle Beach v. City of Myrtle Beach*, 420 F.3d 322, 328 (4th Cir. 2005). That portion of *Sunrise Corp.*, however, refers to procedural due process.

as its federal and state substantive due process rights. Both parties agree that, if Leith possesses a vested right in the Property as previously zoned, the new ordinance cannot be applied to Leith.

The Town thus faces an uphill battle as to this argument because we have repeatedly indicated "cases involving questions of state and local land use and zoning law are a classic example of situations" where *Burford* should apply, and that "federal courts should not leave their indelible print on local and state land use and zoning law by entertaining these cases and . . . sitting as a zoning board of appeals." *Pomponio*, 21 F.3d at 1327; *see also MacDonald v. Village of Northport*, 164 F.3d 964, 969 (6th Cir. 1999) (adopting *Pomponio* approach as "sound"). Thus, "[i]n cases in which plaintiffs' federal claims stem solely from construction of state or local land use or zoning law, not involving the constitutional validity of the same and absent exceptional circumstances . . ., the district courts should abstain under the *Burford* doctrine to avoid interference with the State's or locality's land use policy." *Pomponio*, 21 F.3d at 1328. In addition, we have consistently found *Burford* abstention appropriate when the claim is really "state law in federal law clothing." *Johnson*, 199 F.3d at 721 (cataloguing cases). Leith's sole federal claim is entirely dependent upon resolution of its state law claim in its favor.

The Town does not dispute this backdrop; it merely contends that this *particular* issue of land use policy is easily answered. We are not so sure. Under North Carolina law, "[t]he adoption of a zoning ordinance does not confer upon citizens . . . any vested rights to have the ordinance remain forever in force, inviolate and unchanged." *McKinney v. City of High Point*, 79 S.E.2d 730, 734 (N.C. 1954). However, "rooted in the 'due process of law' and the 'law of the land' clauses of the federal and state constitutions," North Carolina courts have recognized "[t]he 'vested rights' doctrine . . . as a constitutional limitation on the state's exercise of its police power to restrict an individual's use of private property by the enactment of zoning ordinances." *Godfrey v. Zoning Bd. of Adjustment*, 344 S.E.2d 272, 279 (N.C. 1986). Generally, "a determination of the 'vested rights' issue requires resolution of questions of fact, including reasonableness of reliance, existence of good or bad faith, and substantiality of expenditures." *Godfrey*, 344 S.E.2d at 279; *see also Town of Hillsborough v. Smith*, 170 S.E.2d 904, 909 (1969) (same).

Of course, "one does not acquire a vested right to build, contrary to the provisions of a subsequently enacted zoning ordinance, by the mere purchase of land in good faith with the intent of so building thereon. . . ." *Town of Hillsborough*, 170 S.E.2d at 909. The Supreme Court of North Carolina has explained that to establish a vested rights claim, a plaintiff must, at a minimum, have "obtained a building permit" or "begun actual construction in good faith reliance on the existing zoning." *Finch v. City of Durham*, 384 S.E.2d 8, 20 (N.C. 1989); *see also Browning-Ferris Indus. v. Guilford County Bd. of Adjustment*, 484 S.E.2d 411, 415 (N.C. Ct. App. 1997) (finding plaintiff had no vested right even though it had made substantial expenditures in reliance on a pre-amended ordinance and conditional approval of its site development plan). As one court has explained,

> In those situations where multiple permits are required preliminary to the issuance of the building permit, and substantial obligations and/or expenditures are incurred in good faith reliance on the issuance of those permits, the party does acquire a vested right in those provision(s) of the ordinance or regulation pursuant to which the preliminary permit(s) was issued.

*Browning-Ferris Indus.*, 484 S.E. 2d at 414.

More recently, North Carolina courts have indicated that a party may establish a vested right by "obtaining a final interpretation of the Ordinance from the County's Planning Staff stating that [the use is permitted]." *Huntington Props., L.L.C. v. Currituck County*, 569 S.E.2d 695, 701 (N.C. Ct. App. 2002).

Leith's actions regarding the Property fall somewhere in between this caselaw. Leith received written confirmation that the GB zoning and the Ordinance permitted an Auto Park on the Property and had obtained an architectural compliance permit at the time of the rezoning. Leith had also expended sums exceeding $2 million in reliance on its belief that an Auto Park was permitted. Leith had not, however, obtained a building permit. Thus, its status under North Carolina law appears to us to be unclear, and we are, of course, hesitant to act as a "zoning board of appeals." *Pomponio*, 21 F.3d at 1327; *cf. Neufeld v. City of Baltimore*, 964 F.2d 347, 351 (4th Cir. 1992) (finding *Bur-*

*ford* abstention inappropriate because case "involves local land use issues only in a peripheral sense" and those issues "are not presented in the context of difficult interpretations of state law of peculiar concern.")

The case might be different if, for instance, Leith had already received its building permit and used that permit to build on the land, thus advising the neighborhood of the use, *see A Helping Hand*, 515 F.3d 356 at 371 (finding district court correctly instructed jury that plaintiff held a vested right under such circumstances), or if Leith had simply purchased the Property but taken no other actions prior to the rezoning. As it currently stands, however, Leith sits in somewhat of a gray area on the edges of the vested rights doctrine under North Carolina law. Moreover, we remain ever mindful that "land use questions . . . are the peculiar concern of local and state governments, and traditionally, federal courts have not interfered with state courts in the area of land use policy." *Browning-Ferris, Inc. v. Baltimore County*, 774 F.2d 77, 79 (4th Cir. 1985). A ruling in this case on Leith's vested rights claim by necessity would impact the land use policy of the Town, a step we are hesitant to take.

Compounding this lack of clarity is that North Carolina currently has no mechanism for us to certify questions of state law to its Supreme Court. *See N.C. Right to Life, Inc. v. Bartlett*, 168 F.3d 705, 711 n.1 (4th Cir. 1999) (noting "North Carolina has no procedure by which we may certify these questions [of the construction of state law] to its Supreme Court"). For these reasons, we conclude that the district court did not abuse its discretion in concluding that *Burford* abstention was appropriate because the case involved difficult issues of state land use policy.

IV.

Based on the foregoing discussion, we ultimately conclude that the district court did not abuse its discretion in abstaining and staying the case under *Burford*. Therefore, the district court's decision is

*AFFIRMED*.