DAVIS, Senior Circuit Judge,
concurring in the judgment in part and dissenting in part:
The district court allowed a bankruptcy court to protect its jurisdiction over a state law claim by refusing to acknowledge that a proof of claim in the bankruptcy case had become moot by virtue of its abandonment and withdrawal by the creditor. I am constrained to reject this jurisdictional sleight of hand.
Appellee Oteria Moses, faced with severe financial difficulties, obtained from Western Sky Financial, LLC (“Western Sky”) a $1,500 loan; Appellant, CashCall, Inc. (“CashCall”) is Western Sky’s successor-in-interest. Upon Moses’s filing of a bankruptcy petition, CashCall filed a proof of claim, seeking nearly $2,000 from Moses’s estate. Moses objected and filed an adversary proceeding in which she requested (1) a judgment declaring the loan agreement void under the North Carolina Consumer Finance Act (“NCCFA”) and (2) money damages for CashCall’s alleged violation of North Carolina’s Prohibited Acts by Debt Collectors statute (“North Carolina Debt Collection Act” or “NCDCA”).
CashCall, explaining that it was abandoning its claim for the outstanding balance of the loan, filed a motion to withdraw its proof of claim and then, shortly after that, a motion to compel arbitration of the adversary proceeding. The bankruptcy court denied both motions. Upon Cash-Call’s appeal, the district court denied CashCall’s motion for leave to appeal the denial of its motion to withdraw its proof of claim, and the court affirmed the bankruptcy court’s order refusing to compel arbitration.
On appeal to this Court, CashCall challenges the bankruptcy court’s denial of its motion to compel arbitration. CashCall did not, however, note an appeal from the district court’s denial of leave to appeal the bankruptcy court’s order disallowing withdrawal of its proof of claim. At oral argument before this panel, while reiterating that it has abandoned its proof of claim, CashCall explained that it did not believe it could appeal to this Court the district court’s denial of leave to appeal.
For the reasons stated below, I would elect to exercise our discretion to review the bankruptcy court’s denial of the motion to withdraw the proof of claim, reverse in part, vacate in part, and remand with instructions that the district court reverse the bankruptcy court’s denial of the motion to compel arbitration.
I.
When reviewing a district court’s judgment affirming a bankruptcy court’s order, we “consider directly the bankruptcy court’s findings of facts and conclusions of law.” In re Alvarez, 733 F.3d 136, 140 (4th Cir.2013). We review the bankruptcy *89 court’s (as well as the district court’s) legal conclusions de novo. Id. Findings of fact are reviewed for clear error. Id.
II.
A.
I look first to the bankruptcy court’s denial of CashCall’s motion to withdraw its proof of claim. Moses suggests that, despite CashCall’s representations to the bankruptcy court and to this Court that it has abandoned its claim on the loan, the bankruptcy court nevertheless properly denied the motion to withdraw the proof of claim. I cannot agree.
Federal Rule of Bankruptcy Procedure 3006 provides .that:
If after a creditor has filed a proof of claim an objection is filed thereto or a complaint is filed against that creditor in an adversary proceeding, ... the creditor may not withdraw the claim except on order of the court after a hearing on notice to the trustee or debtor in possession ....
A motion to withdraw a proof of claim under Rule 3006 has been analogized to a motion under Federal Rule of Civil Procedure 41(a), and thus similar considerations govern both motions. See, e.g., In re Varona, 388 B.R. 705, 726 (E.D.Va.2008); In re Kaiser Group Int’l, Inc., 272 B.R. 852, 855 (D.Del.2002); In re 20/20 Sport, Inc., 200 B.R. 972, 979 (S.D.N.Y.1996). “As with a[] motion [to voluntarily dismiss a civil action], a motion to withdraw a proof of claim is left to the court’s discretion, which is ‘to be exercised with due regard to the legitimate interests of both [parties].’ ” In re Ogden New York Servs., 312 B.R. 729, 732 (S.D.N.Y.2004) (quoting 20/20 Sport, Inc., 200 B.R. at 979). “In general, withdrawal should be granted unless the party opposing the motion can demonstrate that it would be legally prejudiced by the withdrawal.” Id.; see also In re Lowenschuss, 67 F.3d 1394, 1399-1400 (9th Cir.1995).
Here, Moses failed to demonstrate that she would be “legally prejudiced” by the withdrawal of CashCall’s proof of claim. The bankruptcy court reached the opposite conclusion by reasoning that “allowing CashCall to withdraw its claim would ... eliminat[e] [the court’s] jurisdiction over any cases of action related to the claim,” and force Moses “to file an action in the General Court of Justice for the State of North Carolina or proceed with arbitration as required by the loan agreement.” J.A. 92. This was legal error; the bankruptcy court is simply incorrect that Moses would suffer cognizable prejudice by litigating her claims in state court or following the arbitration procedures set out in her loan agreement (as supplemented by the availability of judicial review after any arbitration proceedings). Cf. In re Armstrong, 215 B.R. 730, 732 (E.D.Ark.1997); In re Cnty. of Orange, 203 B.R. 977, 982 (C.D.Cal.1996). I would decline to hold, at least on the record here, that it constitutes “prejudice” not to have a United States bankruptcy judge (as opposed to some other adjudicator) decide a state law claim between private parties. Given the absence of any legally cognizable prejudice to Moses should CashCall’s proof of claim be withdrawn, the bankruptcy court committed legal error and thereby abused its discretion in denying CashCall’s motion. See Dart Cherokee Basin Operating Co., LLC v. Owens, — U.S. -, 135 S.Ct. 547, 555, 190 L.Ed.2d 495 (2014) (“A court ‘would necessarily abuse its discretion if it based its ruling on an erroneous view of the law.’ ” (quoting Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990))); Koon v. United States, 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) (“A district *90 court by definition abuses its discretion when it makes an error of law.”).
In so concluding, I observe that, although the district court denied leave to file an interlocutory appeal of the bankruptcy court’s order disallowing withdrawal of the proof of claim, and although CashCall did not include in its notice of appeal to this Court a challenge to the district court’s denial of leave to appeal the withdrawal motion, we may nevertheless assess the propriety of the bankruptcy court’s order. Cf. Dart Cherokee, 135 S.Ct. at 555-56 (finding “no jurisdictional barrier” to review of a district court’s order, even though the court of appeals denied leave to appeal that order). While the court must “rely on the parties to frame the issues for decision,” Greenlaw v. United States, 554 U.S. 237, 243, 128 S.Ct. 2559, 171 L.Ed.2d 399 (2008), the Supreme Court has long recognized that “a court may consider an issue, ‘antecedent to ... and ultimately dispositive of the dispute before it, even an issue the parties fail to identify and brief.” U.S. Nat’l Bank of Or. v. Indep. Ins. Agents of Am., Inc., 508 U.S. 439, 447, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993) (quoting Arcadia v. Ohio Power Co., 498 U.S. 73, 77, 111 S.Ct. 415, 112 L.Ed.2d 374 (1990) (alterations in original)).
Under the pendent appellate jurisdiction exception to the final judgment requirement, “we retain the discretion to review issues that are not otherwise subject to immediate appeal when such issues are so interconnected with immediately appeal-able issues that they warrant concurrent review.” Rux v. Republic of Sudan, 461 F.3d 461, 475 (4th Cir.2006). “Pendent appellate jurisdiction is an exception of limited and narrow application driven by considerations of need, rather than of efficiency,” and “is available only (1) when an issue is ‘inextricably intertwined’ with a question that is the proper subject of an immediate appeal; or (2) when review of a jurisdictionally insufficient issue is ‘necessary to, ensure meaningful review' of an immediately appealable issue.” Id. (quoting Swint v. Chambers Cnty. Comm’n, 514 U.S. 35, 50-51, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995)).[1]
Here, we undoubtedly have jurisdiction to review the district court’s affirmance of the bankruptcy court’s final order refusing to compel arbitration. See In re Wallace & Gale Co., 72 F.3d 21, 24 (4th Cir.1995) (generally describing appealable orders in bankruptcy proceedings); see also Noohi v. Toll Bros., Inc., 708 F.3d 599, 604 (4th Cir.2013) (“In short, a party may appeal the denial of a motion to stay an action *91 concerning a matter that a written agreement has committed to arbitration.”). The question, then, is whether we may exercise pendent appellate jurisdiction to concurrently review for legal error the bankruptcy court’s order denying withdrawal of the proof of claim. The answer is yes.
Whether the bankruptcy court properly denied leave to withdraw the proof of claim is “inextricably intertwined” with whether it properly refused to compel arbitration. This could not be more clear, because as both the bankruptcy court (explicitly) and the district court (implicitly) recognized, CashCall’s abandonment of its proof of claim and consequent release of Moses from her obligations under the loan agreement altogether moots Moses’s core claim. And, once CashCall abandons its proof of claim and releases Moses from her obligations under the loan agreement, the sine qua non of the bankruptcy court’s justification for retaining jurisdiction over Moses’s non-core claim evaporates; there is no core claim to remit to arbitration, and the only question is whether to compel arbitration on Moses’s non-core claim. Cf. EQT Prod. Co. v. Adair, 764 F.3d 347, 364-65 (4th Cir.2014) (suggesting that pendent appellate jurisdiction is available when resolution of a pendent issue is necessary to resolve an issue properly before the court on appeal). Accordingly, I would elect to exercise pendent appellate jurisdiction over the bankruptcy court’s order denying withdrawal of the proof of claim.[2]
Turning to whether CashCall properly designated this order for appeal, I note that “[n]otices of appeal ... are liberally construed, and we can exercise jurisdiction over orders not specified in a notice of appeal if (1) there is a connection between the specified and unspecified orders; (2) the intention to appeal the unspecified order is apparent; and (3) the opposing party is not prejudiced and has a full opportunity to brief the issues.” Powell v. Symons, 680 F.3d 301, 306 n. 2 (3d Cir.2012) (citation and internal quotation marks omitted); see United States ex rel. Hefner v. Hackensack Univ. Med. Ctr., 495 F.3d 103, 108 n. 1 (3d Cir.2007) (exercising discretion to review an order not specified in the notice of appeal, as there was a “definite connection” between that order and an order that had been specified); see also MLC Auto., LLC v. Town of Southern Pines, 532 F.3d 269, 279-80 (4th Cir.2008) (recognizing that notices of appeal are to be liberally construed, and that a party may demonstrate an intent to appeal an order not specified in the notice of appeal, as long as the appellee is not prejudiced by the appellant’s failure to specifically note that order).
As already discussed above, there is undoubtedly, a close connection between the bankruptcy court’s order on CashCall’s motion to withdraw its proof of claim and its order on CashCall’s motion to compel arbitration. Additionally, CashCall made clear its desire to appeal the bankruptcy court’s order on its withdrawal motion, as it stated time and again that it had abandoned its proof of claim and sought leave before the district court to appeal the denial. Moses, therefore, was on notice that we may take up this issue and, indeed, argued before this panel that the denial of leave to appeal the bankruptcy court’s order precluded our review.
*92 In any event, to conclude that we may not review the bankruptcy court’s order on CashCall’s motion to withdraw suborns its abuse of discretion and permits it, in essence, to solve a problem that does not exist: by denying the motion to withdraw the proof of claim, the bankruptcy court insisted on deciding the abstract question of the validity and enforceability of an abandoned loan agreement, and relatedly, whether CashCall may receive an award from Moses’s estate, despite the fact that CashCall indicated it was no longer seeking any such award. Cf. Dart Cherokee Basin Operating, 135 S.Ct. at 556 (recognizing that, should the Supreme Court refuse to review a district court order, which the court of appeals denied leave to appeal, the district court’s incorrect statement of the law would remain impermissibly “frozen in place”); see also Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 99, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991) (recognizing a court’s fundamental obligation to ascertain controlling law).
In sum, I cannot, as Moses would have us do, ignore CashCall’s representations to the bankruptcy court, to the district court, and to us, by way of its counsel’s binding judicial admission, that it has abandoned its claim for the outstanding balance of the loan. Having recognized that CashCall released Moses from her obligations under the loan agreement, I would conclude that Moses’s core claim has been rendered moot. Under this reasoning, we need not decide whether the bankruptcy court erred in refusing to compel arbitration on Moses’s core claim, and are instead left with the narrow question of whether her non-core claim must be referred to arbitration.
B.
I agree with CashCall that Moses’s non-core claim must be remitted to arbitration, as doing so would not substantially interfere with her efforts to reorganize.
1.
The FAA “establishes ‘a federal policy favoring arbitration.’ ” Shearson/American Exp., Inc. v. McMahon, 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (quoting Moses H. Cone Mem’l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). Simply put, it requires courts to “ ‘rigorously enforce agreements to arbitrate’ ” by compelling arbitration of all claims contemplated by the arbitration agreement. Id. (quoting Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985)).
“Like any statutory directive,” however, the FAA “may be overridden by a contrary congressional command.” Id. Congressional intent to override the FAA’s policy favoring arbitration may be ascertained from (1) the text of the statute, (2) its legislative history, or (3) “an inherent conflict between arbitration and the statute’s underlying purposes.” Id. at 227, 107 S.Ct. 2332 (emphasis added).[3] The party opposing arbitration has the burden of showing “Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue.” Id.
Applying McMahon, we have considered whether there is an “inherent conflict” between arbitration and the bankruptcy laws justifying the bankruptcy court’s refusal to compel arbitration. In In re White Mountain Mining Co., L.L.C., 403 F.3d 164 (4th Cir.2005), Joseph Phillips initiated an adversary proceeding in bankruptcy court against White Mountain Mining Company, L.L.C. (“White Mountain”), claiming, inter *93 alia, that money he advanced to the company was a debt owed to him.[4] Id. at 167. In response, one of the owners of White Mountain — who asserted that Phillips’s advances to White Mountain were contributions to capital rather than loans — moved the bankruptcy court to compel arbitration of Phillips’s claims, citing an arbitration agreement the parties had signed. Id. at 166-67.
The bankruptcy court denied the motion. Id. at 167. It reasoned that, “because Phillips’s complaint sought ‘a determination that [he] is owed money by the Debt- or,’ it entailed a core proceeding under 28 U.S.C. § 157(b)(2)(B).” Id. This core proceeding, the bankruptcy court determined, “presented issues that were ‘critical to [White Mountain’s] ability to formulate a Plan of Reorganization,” and therefore “trumped the arbitration.” Id.
In a comprehensive opinion by Judge Michael, we affirmed. The court determined that “[t]he inherent conflict between arbitration and the purposes of the Bankruptcy Code is revealed clearly in this case, in which both the adversary proceeding and the [ ] arbitration involved the core issue of whether Phillips’s advances to the debtor were debt or equity.” Id. at 170 (emphasis added). As found by the bankruptcy court,
an ongoing arbitration proceeding ... would (1) make it very difficult for the debtor to attract additional funding because of the uncertainty as to whether Phillips’s claim was debt or equity, (2) undermine creditor confidence in the debtor’s ability to reorganize, (3) undermine the confidence of other parties doing business with the debtor, and (4) impose additional costs on the estate and divert the attention and time of the debtor’s management....
Id. The bankruptcy court’s findings, we reasoned, were not clearly erroneous and, indeed, confirmed that arbitration would be “inconsistent with the purpose of the bankruptcy laws to centralize disputes about a chapter 11 debtor’s legal obligations so that reorganization can proceed efficiently.” Id. Because “arbitration would have substantially interfered with the debtor’s efforts to reorganize,” the bankruptcy court did not err in refusing to compel arbitration. Id.
2.
Applying White Mountain to Moses’s case, arbitration of her non-core claim under the NCDCA would not substantially interfere with her ability to reorganize. The only way in which the non-core claim is even related to the bankruptcy proceedings is that, if it is successful, the bankruptcy estate will recover additional funds. Moses offers no explanation — and I can conceive of none — as to how an enlargement of the assets in the bankruptcy estate would frustrate creditor distribution or otherwise interfere with the bankruptcy proceedings. Thus, in sum, I agree with CashCall that Moses must arbitrate her non-core claim.
C.
Finally, I note Moses’s argument, made for the first time on appeal, that her claims may not be referred to arbitration, as no arbitral forum actually exists. Moses claims in particular that “there is no such thing as arbitration conducted by the Cheyenne River Sioux Tribe, there are no tribal representatives authorized to conduct arbitration, and there are no tribal consumer dispute rules.” Moses Br. 2. Tribal arbitration, she asserts, is a “legal *94 black hole,” created “to shield [CashCall’s] illegal lending scheme from any American court and any American law.” Moses Br. 2.
These assertions are not without support; this is hardly the first time that CashCall’s practices have been called into serious question. Most recently, in Inetianbor v. CashCall, Inc., 768 F.3d 1346 (11th Cir.2014), the Eleventh Circuit held that CashCall could not enforce a tribal arbitration agreement, as the agreement required the involvement of the Cheyenne River Sioux Tribe, yet the Tribe would not participate in any arbitration proceedings. Id. at 1350-54; see also id. at 1354-56 (Restani, J., concurring) (explaining that she would refuse to compel arbitration because the agreement to arbitrate was both procedurally and substantively unconscionable). Likewise, in Jackson v. Payday Fin., LLC, 764 F.3d 765 (7th Cir.2014), the Seventh Circuit held that CashCall, along with other payday lenders, could not enforce a tribal arbitration agreement, calling it a “sham.” Id. at 768, 779. The Seventh Circuit determined that the agreement was procedurally and substantively unconscionable because the Cheyenne River Sioux Tribe “has neither a set of'procedures for the selection of arbitrators nor one for the conduct of arbitral proceedings” and there “was no prospect ‘of a meaningful and fairly conducted arbitration.’ ” Id. at 778-79; see also National Association of Consumer Bankruptcy Attorneys Br. 2-3 (stating that at least seventeen states have initiated formal proceedings to stop CashCall’s operations from affecting their residents, more than ten states have issued cease and desist orders against CashCall’s internet lending operations, and several states have determined that CashCall’s loans are void in whole or in part).
I do not hesitate to observe the odiousness of CashCall’s apparent practice of using tribal arbitration agreements to prey on financially distressed consumers, while shielding itself from state actions to enforce consumer protection laws. Nor do I blink at the underlying motivations of CashCall’s transparently tactical decision to withdraw its proof of claim in this case as a means to pretermit the adversary proceedings. Yet, unlike the above cited cases, this case does not call upon us to determine whether Moses’s arbitration agreement is unenforceable on its face. Because Moses never raised this issue in the proceedings below, we lack any factual record upon which to make such a ruling. I note that nothing contained in this opinion would impair Moses’s ability to raise the issue of unconscionability (and any other alleged bar to arbitration of her damages claims under North Carolina law) upon further proceedings in any action against CashCall.
III.
For the reasons stated above, I would reverse in part, vacate in part, and remand this case with instructions that the district court reverse the bankruptcy court’s denial of the motion to compel arbitration. I am pleased that that is the ultimate result reached by the panel.

. Judge Niemeyer, relying on Swint, claims that pendent appellate jurisdiction is unavailable in this case, because “there is no final judgment to which review of the bankruptcy court’s order could be appended.” Ante, at 79 (emphasis in original). But Swint simply refused to recognize " 'pendent party' appellate jurisdiction.” 514 U.S. at 51, 115 S.Ct. 1203. In Swint, the Court concluded that “[t]he Eleventh Circuit’s authority immediately to review the District Court’s denial of the individual police officer defendants' summary judgment motions [based on their alleged immunity from suit] did not include authority to review at once the unrelated question of the county commission’s liability.” Id. (emphasis added). In any event, the district court’s order affirming the bankruptcy court's refusal to compel arbitration is, in function, a final order. The district court's ruling pretermit-ted all arbitration proceedings, conclusively resolving a specific dispute within the larger case. See Mort Ranta v. Gorman, 721 F.3d 241, 246 (4th Cir.2013) ("As we have recognized on many occasions, the concept of finality in bankruptcy traditionally has been applied in a ‘more pragmatic and less technical way’ than in other situations.... [W]e have held final and appealable a variety of orders that resolve a specific dispute within the larger case without dismissing the entire action or resolving all other issues.” (citations and internal quotation marks omitted)).

. Judge Niemeyer disagrees that the bankruptcy court's order denying withdrawal of the proof of claim is inextricably intertwined with the district court’s order affirming the bankruptcy court's refusal to compel arbitration. Ante, at 80-81. I cannot reconcile this conclusion with his determination that Moses's core and non-core claims are so closely intertwined that they dare not be disaggregated.

. Moses does not assert that either the text of the Bankruptcy Code or its legislative history demonstrates congressional intent to limit the FAA. See Moses Br. 13.

. Phillips also sought a judgment declaring that he did not have to advance any additional money to White Mountain. White Mountain, 403 F.3d at 167.