478 F.3d 634
 Timothy ZINKAND, Plaintiff-Appellant,
v.
Timothy S. BROWN, Defendant-Appellee, and
Anne Arundel County Police Department; K. Edmonds, Detective; T.A. Giunta, Detective; Unnamed Detectives and Police Officers, Defendants.
 No. 05-2170.
 United States Court of Appeals, Fourth Circuit.
 Argued: October 25, 2006.
 Decided: March 1, 2007.
 
 ARGUED: Neal Cormac Baroody, Baroody & O'Toole, Baltimore, Maryland, for Appellant. Andrew Jensen Murray, Anne Arundel County Office of Law, Annapolis, Maryland, for Appellee. ON BRIEF: Thomas O'Toole, Baroody & O'Toole, Baltimore, Maryland, for Appellant. Linda M. Schuett, County Attorney, Anne Arundel County Office of Law, Annapolis, Maryland, for Appellee.
 Before WIDENER, WILLIAMS, and TRAXLER, Circuit Judges.
 Reversed and remanded by published opinion. Judge TRAXLER wrote the majority opinion, in which Judge WILLIAMS joined. Judge WIDENER wrote a dissenting opinion.
 OPINION
 TRAXLER, Circuit Judge:
 
 
 1
 Timothy Zinkand brought this § 1983 action against Anne Arundel County, Maryland, and several of its police officers, including Officer Brown. The district court granted summary judgment in favor of all defendants, and Zinkand moved for reconsideration. The district court denied Zinkand's motion, and Zinkand appeals only the decision rendered in favor of Detective Timothy Brown on the claim of excessive force. We hold that the district court erred in denying Zinkand's motion to alter or amend by finding that judicial estoppel applied, and we must therefore reverse and remand.
 
 I.
 
 2
 On April 11, 2000, officers of the Anne Arundel County police were conducting an undercover drug purchase in a shopping center parking lot within their jurisdiction. Officer Kenneth Edmonds was there with Connie Williams, a confidential informant, to purchase heroin from Robert Carr, Williams's boyfriend. Carr arrived on foot, led Edmonds behind a Photomat booth, and then took money from Edmonds for the drugs. While all of this was going on, Zinkand arrived by automobile. At some point Carr went over to Zinkand's car and an object was passed from Zinkand to Carr. Edmonds gave a pre-arranged signal, and law enforcement officers converged on the scene.
 
 
 3
 Detective Brown was among those officers responding. Brown went to the driver's door of Zinkand's car and ordered Zinkand to show his hands. Brown then removed Zinkand from the car and took him to the ground to handcuff him. In the process, Zinkand's head hit the pavement, and Zinkand sustained an injury.
 
 
 4
 Zinkand was charged in state court with a number of drug offenses and resisting arrest. A plea bargain was reached between Zinkand and the state whereby Zinkand would submit to a period of probation on the charge of resisting arrest as long as the state judge would not require an admission of guilt and not enter a criminal judgment against Zinkand. The state represented in open court that if the judge refused to impose probation and withhold judgment, the state would not oppose a motion from Zinkand to withdraw his plea. Pursuant to this arrangement Zinkand ultimately entered a plea in accord with North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), a case in which the Supreme Court held that a criminal defendant could "voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." Id. at 37, 91 S.Ct. 160.
 
 
 5
 During the plea process, the state trial judge advised Zinkand about the nature of his plea:
 
 
 6
 [The] Alford plea that you have entered into is, is like a guilty plea. The difference is that you're allowed to maintain your innocence, but the final results are the same. As long as I find that there are sufficient facts to support your plea, I'm going to enter a verdict of guilty. Is that understood?
 
 
 7
 J.A. 162. Zinkand indicated that he understood the consequences of his plea, and the court accepted his plea with Zinkand never specifically agreeing that he resisted arrest. The trial court, following Maryland procedure, did not enter a judgment but instead imposed "probation before judgment." Md.Code Ann.Crim. Proc. § 6-220(b) (2001).
 
 
 8
 Zinkand thereafter brought suit in federal court against the law enforcement officers and Anne Arundel County. After conducting discovery, the defendants moved for summary judgment. The defendants supported their motion with deposition testimony of the officers on the scene at the time of the arrest, deposition testimony of Carr and Zinkand, hospital records of medical personnel who examined Zinkand the night of his arrest, a transcript of Zinkand's plea in state court, and an affidavit from an expert in police practices, policy, and training. Although Zinkand was represented by counsel, his attorney filed no opposition to the defendants' motion for summary judgment. The district court granted summary judgment in favor of the defendants. The court explained:
 
 
 9
 As to plaintiff's claim for excessive force, only one of the defendants (Officer Brown) touched plaintiff and this officer was fully justified in using his hands to subdue plaintiff. Plaintiff entered an Alford plea to a charge of resisting arrest, and this resistence precipitated the use of force about which plaintiff now complains. He suffered only a minor laceration, and the use of force was reasonable as a matter of law.
 
 
 10
 J.A. 180 (footnote omitted).
 
 
 11
 Six days later, Zinkand, acting pro se, filed in the district court's chambers a document styled, "A Request to Reconsider On Motion for Summary Judgment and Time To Find New Counsel." Zinkand attached copies of police reports, a number of unsigned statements, and an outline of questions about the defendants' evidence.
 
 
 12
 Zinkand thereafter obtained new lawyers, who filed a document identified as a "Supplemental Memorandum and Reply In Support of Motion To Alter or Amend Judgment." Along with this memorandum were a number of documents including deposition excerpts, a medical report, and a photograph. The defendants replied with a final memorandum, and the motion was scheduled for argument before the district court.
 
 
 13
 It is not apparent from the record whether the supplemental memorandum was filed under Rule 59(e) or 60(b) of the Federal Rules of Civil Procedure. The memorandum filed by Zinkand's attorneys prior to the hearing referred to the motion as one to alter or amend, which suggests a motion under Rule 59(e), and the motion cited case law referencing Rule 59(e). But when the attorneys argued the motion before the district court, counsel stated that Zinkand was there "under Rule 60, and primarily on equitable grounds." J.A. 214. The differences between the two rules are substantial and affect what evidence can be considered and what law controls.
 
 
 14
 Ultimately, however, what is important is how the district court viewed the matter, and in this regard the court was very clear and specifically ruled on "the motion to alter or amend." J.A. 235. No objection was raised to the court's statement then or since. We therefore examine the district court's decision on the merits in this context and subject to the rules governing Rule 59(e).
 
 II.
 
 15
 The Rules of Civil Procedure provide several methods by which judgments may be re-examined. One vehicle is a motion to alter or amend under Rule 59(e). The rule does not specify the reasons that will support such a motion and provides only that such motions "shall be filed no later than 10 days after entry of the judgment." Fed.R.Civ.P. 59(e). Our case law makes clear, however, that Rule 59(e) motions can be successful in only three situations: "`(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice.'" Ingle v. Yelton, 439 F.3d 191, 197 (4th Cir.2006) (quoting Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir.1998)).
 
 
 16
 Thus, Rule 59(e), in essence, gives the district court a chance to correct its own mistake if it believes one has been made. See Pac. Ins. Co., 148 F.3d at 403. To this end, the court, of necessity, has some discretion to determine whether additional evidence should be considered or further argument heard. If the court elects to look at additional evidence represented as having been unavailable at the prior hearing, the court must satisfy itself as to the unavailability of the evidence and likewise examine the justification for its omission. See RGI, Inc. v. Unified Indus., Inc., 963 F.2d 658, 662 (4th Cir.1992) (concluding that a district court can accept new evidence under Rule 59(e) as long as the party provides justification for why the evidence was not presented previously). Here the district court was dealing with a situation where Zinkand's prior counsel apparently had simply refused to go forward with Zinkand's case. There were hints in the record as to what the reason for that refusal was, but whatever the reason, the district court saw fit to consider the new evidence. Because the defendants have not objected to the court's consideration of the new evidence, we will not look behind that decision.
 
 
 17
 The same analysis applies to the district court's decision to hear further legal argument. The district court has discretion to consider new arguments in some circumstances. After evaluating all of the issues presented to it, the district court held a hearing, received the new evidence, listened to extensive argument, and ultimately decided to deny the motion to alter or amend the judgment. We review that decision for an abuse of discretion. See Ingle, 439 F.3d at 197.
 
 
 18
 The district court believed that the additional evidence supplied by Zinkand created a genuine issue of material fact that would ordinarily require a trial for resolution, a point agreed to by counsel for the defendant.[1] If this had been the only issue, obviously the district court would have granted the Rule 59(e) motion. But the district court viewed the legal effect of the Alford plea as dispositive. In the view of the district court, principles of judicial estoppel precluded Zinkand after his plea from challenging the officer's right to use force to remove him from the car, put him on the ground, and handcuff him. This view then led the district court to conclude that no clear legal error had occurred in its previous ruling, and the court therefore denied Zinkand's motion to alter or amend. We believe the district court erred in its application of principles of judicial estoppel.
 
 
 19
 Judicial estoppel is a principle developed to prevent a party from taking a position in a judicial proceeding that is inconsistent with a stance previously taken in court. See John S. Clark Co. v. Faggert & Frieden, P.C., 65 F.3d 26, 28 (4th Cir. 1995). Three elements must be satisfied before judicial estoppel will be applied. "First, the party sought to be estopped must be seeking to adopt a position that is inconsistent with a stance taken in prior litigation." Lowery v. Stovall, 92 F.3d 219, 224 (4th Cir.1996). The position at issue must be one of fact as opposed to one of law or legal theory. Id. "Second, the prior inconsistent position must have been accepted by the court." Id. Lastly, the party against whom judicial estoppel is to be applied must have "intentionally misled the court to gain unfair advantage." Tenneco Chems., Inc. v. William T. Burnett & Co., 691 F.2d 658, 665 (4th Cir.1982). This bad faith requirement is the "determinative factor." John S. Clark Co., 65 F.3d at 29.
 
 
 20
 In the case before us, we find that without specifically reviewing the first two factors, the third factor determines that judicial estoppel was inappropriate. The district court specifically stated in its ruling on judicial estoppel that it was "not suggesting subjective bad faith on the part of Mr. Zinkand." J.A. 240. Indeed, our own examination of the proceedings in state court confirms an intent on the part of Zinkand to obtain the very favorable sentence of probation without an entry of judgment against him and to preserve the same position he asserts in this case: that he did not give Brown reason to use the force that caused his head injury. Without bad faith, there can be no judicial estoppel.[2] Accordingly, we are constrained to conclude that the district court made a clear error of law and consequently abused its discretion in denying the motion to alter or amend. For these reasons, we hereby reverse the district court's decision and remand the case for further proceedings consistent with this opinion.
 
 
 21
 
 REVERSED AND REMANDED.
 
 
 
 
 Notes:
 
 
 [1]
 For example, with regard to the injury he sustained, Zinkand submitted a statement from his doctor that Zinkand had both a cervical herniated disc and a lumbar herniated disc, both of which the doctor was prepared to attribute to his encounter with law enforcement. This evidence had not been available to the district court when the court had previously believed Zinkand suffered only a minor laceration. With this new evidence from Zinkand, both parties and the district court believed a trial was warranted and the issue of the extent of Zinkand's injuries was not presented on appeal, nor was qualified immunity
 
 
 [2]
 It is this absence of bad faith that distinguishes this case fromLowery, in which the plaintiff, Lowery, had pled guilty to the criminal offense and bad faith was deemed to exist. See Lowery v. Stovall, 92 F.3d 219, 225 (4th Cir.1996).
 
 
 WIDENER, Circuit Judge, dissenting:
 
 22
 I respectfully dissent for several reasons. I would affirm.
 
 I.
 The majority opinion describes itself:
 
 23
 The district court denied [plaintiff] Zinkand's motion, and Zinkand appeals only the decision rendered in favor of Detective Timothy Brown on the claim of excessive force. We hold that the district court erred in denying Zinkand's motion to alter or amend by finding that judicial estoppel applied, and we must therefore reverse and remand.
 
 
 24
 As described by the majority, the only claim of Zinkand before us is "of excessive force." But the majority opinion does not deal with the claim it has just described, and, more importantly, does not deal with the precise factual findings of the district court, to which exception is not taken. They are, copied verbatim from the opinion of the district court:
 
 
 25
 The materials submitted by defendants in support of their motion establish beyond doubt that there was ample probable cause to arrest plaintiff. Plaintiff was observed by officers to be involved in an undercover drug [heroin] purchase as the apparent "stash" man. As to plaintiff's claim for excessive force, only one of the defendants (Officer Brown) touched plaintiff and this officer was fully justified in using his hands to subdue plaintiff. Plaintiff entered an Alford plea[1] to a charge of resisting arrest, and this resistence precipitated the use of force about which plaintiff now complains. He suffered only a minor laceration, and the use of force was reasonable as a matter of law. J.A. 180.
 
 
 26
 I submit the reversal of the district court's decision in favor of the defendant, in the face of the facts found by the district court, stated just above, is patently erroneous. To permit plaintiff's claim to go forward "on the claim of excessive force," as described in the majority opinion, slip p. 2, should not be possible in the face of the finding that plaintiff "suffered only a minor laceration, and the use of force was reasonable as a matter of law." J.A. 180.
 
 II.
 
 27
 In my opinion, the majority has erred, and the judgment of the district court should be affirmed for a second separate reason.
 
 
 28
 The plaintiff entered into a plea bargain with the State of Maryland in which he not only received absolution from the charge of obviously felonious participation in the sale of heroin, he received a disposition of probation before judgment on the charge of resisting arrest. Maryland lived up to her end of the bargain, but Zinkand was determined to eat his cake and have it, too. Only a week later, he sued the officers.
 
 
 29
 In the case of Lowery v. Stovall, 92 F.3d 219 (4th Cir.1996), a case on facts so similar as to be persuasive, even if not controlling, one Lowery had been prosecuted for a felony under the Virginia Felonious Assault Statute, Va.Code § 18.2-51.1, following a fight with two arresting officers. Lowery pleaded guilty to the charge, which subjected him to the possibility of 40-60 years in prison. In return for the guilty plea, the Commonwealth agreed to recommend that Lowery be sentenced to only 10 years, to be suspended after the service of two years in prison. That sentence was entered by the trial court. After the sentence, Lowery sued Stovall and Redd, the arresting officers, arguing that he did not maliciously attack Redd. Our decision is best stated by the panel in Lowery at p. 225:
 
 
 30
 For the reasons aptly expressed by Professor Hazard [in 66 Cornell L.Rev. 564, 578 (1981)], we find this argument `too much to take':
 
 
 31
 Particularly galling is the situation where a criminal convicted on his own guilty plea seeks as a plaintiff in a subsequent civil action to claim redress based on a repudiation of the confession. The effrontery or, as some might say it, chutzpah, is too much to take. There certainly should be an estoppel in such a case.
 
 III.
 
 32
 A third reason to affirm the district court is that Officer Brown is entitled to qualified immunity, as Lowery so held. 92 F.3d at 226.
 
 IV.
 
 33
 A fourth reason to affirm is that what has come to be known as an Alford plea should not be construed, as has been done here by the majority, to open the door to recovery under 42 U.S.C. § 1983 which would otherwise be closed.
 
 
 
 Notes:
 
 
 [1]
 After taking the Alford plea and hearing allocution, the state court judge entered a disposition of probation before judgment