KING, Circuit Judge,
dissenting:
More than twenty years ago, our distinguished then-Chief Judge, Harrison L. Winter, wrote forcefully about judgments that result from the failings of counsel. In his compelling opinion in Smith v. Bounds, Judge Winter explained succinctly that
[a] sound discretion hardly comprehends a pointless exaction of retribution. Dismissals for misconduct attributable to lawyers and in no way to their clients invariably penalize the innocent and may let the guilty off scott-free. Moreover, public confidence in the legal system is undermined when a litigant’s claim is dismissed due to the blameworthy actions of their counsel. The litigant does have recourse in such a case — a malpractice action — but that approach may not result in a hearing on the merits of the plain tiffs case.
813 F.2d 1299, 1304 (4th Cir.1987) (citations, internal quotation marks, and alteration omitted).
Another of this Court’s great judges, the inestimable Donald S. Russell, had written eight years earlier — in language not until today repudiated by this Court — that when a “movant has shown a meritorious defense,” the grounds for relief “are to be liberally construed.” Compton v. Alton S.S. Co., 608 F.2d 96, 102 (4th Cir.1979) (internal quotation marks omitted). Judge Russell then emphasized that
[a]ny doubts about whether relief should be granted should be resolved in favor of *416 setting aside the default. In short, any considerations of the need to expedite cases, to fully utilize the court’s time, to reduce overcrowded calendars and to establish finality of judgments should never be used to thwart the objectives of the blind goddess of justice itself.
Id. at 102-03 (citations, internal quotation marks, and alterations omitted).[1]
In resolving this matter, the district court and my fine colleagues in the panel majority both accept the undisputed explanation of Robinson’s lawyer that his law office’s computer and email problems prevented him from receiving electronic notification of Wix’s summary judgment papers. Nevertheless, the lawyer is faulted for failing to sufficiently monitor court filings, thereby rendering acceptable the district court’s ex parte resolution of Wix’s summary judgment motion. As a result, the court’s denial of relief under Federal Rule of Civil Procedure 59(e) is deemed a valid exercise of discretion. As explained below, I disagree.
More specifically, I espouse two primary bases for my dissenting view. First, the district court abused its discretion in denying Robinson’s Rule 59(e) motion, as it misapprehended the compelling relevance of Robinson’s assertion of a meritorious summary judgment defense. Second, to justify its affirmance, the panel majority finds it necessary — as did the district court — to sponsor and apply a new duty to monitor court filings for fear of ex parte proceedings (the “duty to monitor”).[2] Such a duty is antithetical to our notice-based adversarial system.
I.
Although the panel majority offers a brief synopsis of the circumstances of this appeal, the following are essential to its proper understanding and resolution. On August 8, 2008, Wix filed its motion for summary judgment. Robinson’s response was due on August 25, 2008; none was filed. On September 9, 2008, the district court rescheduled the trial of the case— originally set for December 2008 — to February 17, 2009. On December 3, 2008, the court awarded summary judgment to Wix.
Nine days after the summary judgment award, on December 12, 2008, Robinson filed his motion for relief from the judgment and to alter and amend it, pursuant to Rules 59 and 60 of the Federal Rules of Civil Procedure (the “Rule 59(e) motion”). In support thereof, Robinson filed the affidavit of his lawyer, as well as the corroborating affidavit of his lawyer’s paralegal, attesting to the lawyer’s failure to receive notice of Wix’s motion for summary judgment. The lawyer’s affidavit specified, inter alia, the following:
• He “at no point and time received notice that the Motion for Summary Judgment had been filed by [Wix’s] counsel prior to the Court’s December 3, 2008 Order of Dismissal,” J.A. 110;
• He “did not receive electronic notification of the e-mail transmission on August 8, 2008,” id.;
*417 • He “did not receive the notice due to [his] firm’s computer system problems,” id. at 111; and
• He had never failed, in “ten (10) years of practicing law, ... to respond to a Motion for Summary Judgment,” id. at 112.
In urging relief from the judgment, Robinson contended that the court should consider his assertion of a meritorious opposition to Wix’s summary judgment motion.
On December 23, 2008, Wix responded to the Rule 59(e) motion, asserting that Wix “received a Notice of Electronic Filing ... after the [summary judgment] motion was filed.” J.A. 161. Wix further maintained that it “received no notice that the attempted service was unsuccessful.” Id. Wix did not, however, submit any supporting affidavits or evidence, such as the Notice of Electronic Filing of the summary judgment motion.
On January 13, 2009, the day after Robinson filed his reply to Wix’s response (further specifying his assertion of a meritorious opposition to summary judgment), the district court denied the Rule 59(e) motion by its Memorandum of Decision and Order (the “Order of Denial”). At no point did the court receive any evidence other than the affidavits and records submitted by Robinson’s lawyer in support of the Rule 59(e) motion. Nevertheless, the Order of Denial’s procedural review recites that a Notice of Electronic Filing “generated by the Court’s ECF system indicates that notice of [Wix’s motion and supporting papers] was electronically mailed to [Robinson’s] counsel on August 8, 2008. There is nothing in the ECF system to indicate that the transmission of these NEF’s to [Robinson’s] counsel was not successful.” J.A. 179-80. Although the court accepted Robinson’s lawyer’s explanation that computer problems prevented his receipt of the electronic notice of the summary judgment papers, it ruled that “these computer problems did not relieve [Robinson’s] counsel of his obligation to continue to monitor the docket in this case.” Id. at 183.
To deny the Rule 59(e) motion, the court relied on its view that any meritorious summary judgment defense was irrelevant and on the fact that counsel had failed to monitor the docket and maintain his firm’s domain name registration. The court explained:
Given counsel’s apparent failure to monitor the Court’s docket and the lack of any evidence of an error in the docketing of [Wix’s] Motion in the Court’s ECF system, and the fact that at least some portion of [Robinson’s] counsel’s email problems stemmed from counsel’s failure to maintain his firm’s domain name registration, the Court concludes that the failure of counsel does not constitute excusable neglect and that altering or amending the Judgment is not necessary to prevent manifest injustice in this case. See Fox[ v. Am. Airlines, Inc.], 295 F.Supp.2d [56,] 60 [(D.D.C.2003), aff'd, 389 F.3d 1291 (D.C.Cir.2004) ].
[Robinson] further contends that there are genuine issues of material fact which should preclude the granting of summary judgment in this matter. The fact that [Robinson] may have a meritorious opposition to [Wix’s] Motion for Summary Judgment, however, does not constitute a proper basis for reconsideration of the Court’s Judgment. A Rule 59(e) motion “may not be used ... to raise arguments which could have been raised prior to the issuance of the judgment. ...” Pac[.] Ins. Co. [v. Am. Nat’l Fire Ins. Co.], 148 F.3d [396,] 403 [ (4th Cir.1998) ]. Accordingly, [Robinson’s] *418 Motion to Alter or Amend the Judgment on this basis must be denied.
J.A. 185-86 (omissions in original).
Although it disavows so doing, the panel majority likewise adopts a duty to monitor. Indeed, the majority never rejects the district court’s recognition of such a duty, and, in its Rule 59(e) analysis, the majority applies such a duty in order to justify its affirmance. Nevertheless, the majority initially describes a somewhat more circumspect duty to monitor, correlated to the knowledge Robinson’s lawyer had of the motions’ deadline and his computer problems. See, e.g., ante at 408 (“Knowing that dispositive motions were due on August 8, 2008, Appellant’s counsel had good reason, after realizing he was experiencing computer problems, to check the court’s docket after such date or contact the court and opposing counsel to notify them of his computer troubles.”).[3] Thereafter, however, the majority expands this duty through reference to a lawyer’s ethical duties. See id. at 408-09 n. 7.[4]
Additionally, in its discussion of Rule 60(b), the majority enshrines an unbounded duty to monitor. See ante at 413 (concluding that “a party has a duty of diligence to inquire about the status of a case” and that Robinson’s counsel “should have regularly accessed the court’s docket to monitor case activity ... or found another way to stay informed regarding any developments in the case” (internal quotation marks and alteration omitted)). Compounding the problematic nature of the majority’s approach are the myriad problems inherent in this new duty, including its inversion of the obligations enunciated by the Civil Rules, and the inescapable reality that any Rule 60(b) analysis is, as the majority itself recognizes, foreclosed by our circuit precedent.[5]
Moreover, the absence of any evidentiary hearing below does not prevent the panel majority from going well beyond the district court and performing its own fact-finding, including findings on Robinson’s lawyer’s state of mind.[6] Crucially, such *419 improper fact-finding is central to the majority’s abuse-of-discretion analysis. See ante at 409 (“[Bjecause Appellant’s counsel was willfully blind ..., we cannot say that the district court abused its discretion .... ”); see also id. at 409 (finding that “the district court [ ] implicitly] concluded] that Appellant’s counsel opted to engage in willful blindness”). It is axiomatic, however, as our Judge Hall eloquently explained, that appellate courts do not make factual findings. See Columbus-Am. Discovery Group v. Atl. Mut. Ins. Co., 56 F.3d 556, 575-76 (4th Cir.1995) (“It is a basic tenet of our legal system that, although appellate courts often review facts found by a judge or jury ..., they do not make such findings in the first instance.”); see also Maine v. Taylor, 477 U.S. 131, 144-45, 106 S.Ct. 2440, 91 L.Ed.2d 110 (1986) (“[F]actfinding is the basic responsibility of the district courts, rather than appellate courts.” (internal quotation marks omitted)).[7] Accordingly, I am unable to accede to the majority’s unwarranted factual findings in resolving this appeal.
With this background in mind, I turn to a more detailed explanation of why I must dissent.
II.
First, the district court abused its discretion in ruling that it need not consider Robinson’s assertion of a meritorious defense. As a preliminary matter, the panel majority is simply incorrect in asserting that Robinson failed to pursue his meritorious opposition contention on appeal. Robinson raised this issue in all three argument sections of his opening brief. See, e.g., Br. of Appellant 14 (“[Robinson’s] argument that equitable relief should be granted ... because of the existence of a meritorious defense was likewise ignored by the District Court.”); id. at 18 (explaining that “[without [Robinson’s] response[, ] there was no record of [Robinson’s] meritorious defense,” and “[t]he lack of record ... is a manifest injustice”); id. at 26 (asserting that the district court “abuse[d] ... its discretion” in “refusing] to consider the prerequisite issue of a meritorious defense”). The majority simply ignores the fact that Robinson has consistently sought — from the time he first filed his Rule 59(e) motion until today — alternative relief under both Rule 59 and Rule 60. It engages in a hyper-technical parsing of Robinson’s papers, sorting “Rule 59 contentions” from “Rule 60 contentions,” in order to say that Robinson waived a contention that he has maintained throughout this litigation — that the district court ignored his assertion of a meritorious defense. Indeed, Wix itself understood this contention to have been raised on appeal, see Br. of Appellees 22-27, and the lawyers came to oral argument prepared to answer meritorious opposition inquiries, which consumed a substantial portion of their time. Put simply, the majority’s position — that the meritorious opposition as *420 sertion was not raised on appeal — is unfounded.[8]
Turning to the merits of Robinson’s contention, we have heretofore explained, in reversing the denial of Rule 59(e) relief, that “ ‘[a]buse of discretion’ is a legal term of art; it is not a wooden term but one of flexibility, dependent on the type of case in which it is to be applied and the posture of the case when it arises.” Collison v. Int’l Chem. Workers Union, Local 217, 34 F.3d 233, 236 (4th Cir.1994) (internal quotation marks omitted). Nevertheless, it is beyond peradventure that “[a] district court abuses its discretion when it fails to take relevant factors intended to guide its discretion into account or when it acts on the basis of legal or factual misapprehensions respecting those factors.” Pac. Ins. Co. v. Am. Nat’l Fire Ins. Co., 148 F.3d 396, 402-03 (4th Cir.1998) (internal quotation marks omitted).
Rule 59(e), unlike Rule 60(b), includes no itemized list of potential bases for relief. We have consistently recognized, however, three bases for amending a judgment under Rule 59(e): “(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice.” Pac. Ins., 148 F.3d at 403; see also EEOC v. Lockheed Martin Corp., Aero & Naval Sys., 116 F.3d 110, 112 (4th Cir.1997) (same); Hutchinson v. Staton, 994 F.2d 1076, 1081 (4th Cir.1993) (same). It is the second aspect of the third factor — to “prevent manifest injustice” — that is implicated by this appeal.
In its Order of Denial, the district court recognized that Robinson “contends that there are genuine issues of material fact which should preclude the granting of summary judgment in this matter.” J.A. 185. The court nonetheless disregarded this “meritorious opposition” contention, ruling — absent any supporting authority— that “[t]he fact that [Robinson] may have a meritorious opposition to [Wix’s] Motion for Summary Judgment ... does not constitute a proper basis for reconsideration of the Court’s Judgment.” Id. To justify its refusal to consider Robinson’s contention — namely, that he possessed a meritorious defense to the summary judgment motion — the district court latched on to the unremarkable proposition that Rule 59(e) should not be used merely to pursue a contention that could have been raised prior to judgment. See id. This maxim, however, is entirely inapt in these circumstances, for Robinson was not seeking to “relitigate old matters” or “complete presenting his case after the court ... ruled against him.” Pac. Ins., 148 F.3d at 403 (internal quotation marks omitted). Rather, Robinson was asserting a failure of notice with respect to the summary judgment motion itself. Thus, this is not a situation where a party, having lost on his first theory, sought in post-judgment proceedings to present an alternate contention on the merits. Instead, Robinson sought to rectify an adverse ex parte summary judgment award by presenting to the court — for the first time — his assertedly meritorious defense thereto. Stated most succinctly, Robinson sought to litigate, not relitigate.
The district court therefore erred in misunderstanding the relevance of Robinson’s assertion of a meritorious defense. *421 As Wix’s lawyer conceded at oral argument, “manifest injustice” is an inclusive concept that encompasses, inter alia, the impact of the challenged ruling on Robinson. Consequently, whether Robinson asserted a meritorious defense is an important factor in the “manifest injustice” calculus. See Zinkand v. Brown, 478 F.3d 634, 637 (4th Cir.2007) (recognizing, in context of lawyer’s failure to respond to summary judgment motion, that court could consider plaintiffs contentions).[9] The foregoing principle is particularly applicable here, in that the summary judgment award was premised on the facts being deemed “undisputed” solely because Robinson did not respond to the summary judgment motion. See J.A. 86 (“[Robinson] has failed to respond to [Wix’s] motion, and therefore, the facts presented by [Wix] are not in dispute.”).[10] Accordingly, the court’s wholesale disregard of Robinson’s assertion of a meritorious defense was an abuse of its otherwise substantial discretion. See Pac. Ins., 148 F.3d at 402-03 (“A district court abuses its discretion when it fails to take relevant factors intended to guide its discretion into account or when it acts on the basis of legal or factual misapprehensions respecting those factors.” (internal quotation marks omitted)).
The Order of Denial is particularly troubling in the context of our longstanding recognition that “the sanctions for attorney neglect should be borne if at all possible by the attorney himself rather than by his client.” Dove v. CODESCO, 569 F.2d 807, 810 (4th Cir.1978).[11] Our Court has long espoused this principle, in part because “[dismissals for misconduct attributable to lawyers and in no way to their clients invariably penalize the innocent and may let the guilty off scott-free.” Smith v. Bounds, 813 F.2d 1299, 1304 (4th Cir.1987) (internal quotation marks and alteration omitted). Moreover, settled principles of public policy call for resolving lawsuits on their merits and. on well-developed records. See Lockheed Martin, 116 F.3d at 112; CODESCO, 569 F.2d at 810. Indeed, as Judge Winter emphasized in Smith, “public confidence in the legal system is undermined when a litigant’s claim is dismissed due to the blameworthy actions of [his] counsel.” 813 F.2d at 1304. And we have consistently acknowledged that a legal malpractice action is a poor substitute for resolving a litigant’s case on its merits. See id. Ignoring Robinson’s assertion of a *422 “meritorious opposition” disregards these laudable principles.
I would therefore vacate the Order of Denial and remand to the district court, ruling that it abused its discretion by failing to consider Robinson’s assertion of a meritorious opposition in deciding whether Rule 59(e) relief was necessary to pre vent manifest injustice. See Pac. Ins., 148 F.3d at 402-03; see also United States v. Lynn, 592 F.3d 572, 585 (4th Cir.2010) (explaining that, “because there is no indication that the district court considered the defendant’s nonfrivolous arguments,” it abused its discretion). Indeed, in a similar circumstance, we recognized that Rule 59(e) relief was appropriate when a plaintiff, after an adverse summary judgment ruling, was able to demonstrate that genuine issues of material fact were nevertheless in dispute. See Zinkand, 478 F.3d at 637 (explaining that, but for a legal misapprehension, “obviously the district court would have granted the Rule 59(e) motion” where plaintiff demonstrated that genuine issues of material fact were disputed).[12]
III.
A.
In order to justify its conclusion today, the panel majority finds it necessary to sponsor and apply a duty to monitor court filings for fear of ex parte proceedings. See, e.g., ante at 408-09 n. 7; see also id. at 413-14. Such a duty is antithetical to our notice-based adversarial system. See Fed.R.Civ.P. 5. Although the majority utilizes a somewhat vague and ambiguous rule, this duty is nevertheless intended to be applied in retroactive fashion, as a judge’s “common sense and mature judgment” may dictate. See ante at 414. Such a duty will be impossible to fairly assess or apply, and simply translates to a rule of constructive service of legal papers that contradicts the applicable provisions of the Federal Rules of Civil Procedure.
More specifically, the majority’s duty to monitor contradicts the Civil Rules’ requirement that written motions be served by the movant on every party. See Fed. R.Civ.P. 5(a)(1)(D). Although Rule 5, entitled “Serving and Filing Pleadings and Other Papers,” authorizes such service to be effectuated by electronic means, it does not, contrary to the newly invented duty to monitor, authorize anything approaching “constructive service” — i.e., service deemed effective solely by virtue of the electronic filing. Indeed, the Rules explicitly disclaim such an approach, warning that electronic service “is not effective if the serving party learns that it did not reach the person to be served.” See Fed. R.Civ.P. 5(b)(2)(E); see also W.D.N.C. R. 5.3(A) (providing that the Notice of Electronic Filing “constitutes proof of service of the filed document upon all registered users unless the filing party learns that such attempted service was not successful”). This explicit caveat — that electronic service is not effective if the serving party learns that it did not reach the intended recipient — is especially striking given the absence of any such qualification for service by mail. See Fed.R.Civ.P. 5(b)(2)(C) (providing simply that service by mail “is complete upon mailing”). Notably, Rule 5 imposes no time limitation on the protection afforded to litigants by the electronic service caveat — -and the pertinent Advisory *423 Committee Notes establish that this omission was a conscious and carefully considered decision.
The Advisory Committee Notes to the 2001 Amendments to Rule 5 explain that the electronic service caveat, which was initially contained in Rule 5(b)(3),
defeats service by electronic means if the party making service learns that the attempted service did not reach the person to be served. It says nothing about the time relevant to learning of the failure. The omission may seem glaring. Curing the omission, however, requires selection of a time.
Fed.R.Civ.P. 5 Advisory Committee Notes to 2001 Amendments (Changes Made After Publication and Comments) (emphasis added) (internal quotation marks omitted). The Committee Notes further explain that the “issue deserves careful consideration by the Standing Committee” and that a proposed version of the Appellate Rule on service, Rule 25(c), included a durational limitation, i.e., a deadline of three days. Id. Notably, however, as ultimately adopted, Appellate Rule 25(c) contains no such deadline, providing simply that electronic service (as with Rule 5(b)(2)(E)) “is complete on transmission, unless the party making service is notified that the paper was not received by the party served.” Fed. R.App. P. 25(c)(4). The Advisory Committee Notes on Rule 25 explain that
[t]here is one exception to the rule that electronic service is complete upon transmission: If the sender is notified— by the sender’s e-mail program or otherwise — that the paper was not received, service is not complete, and the sender must take additional steps to effect service.
Fed. R.App. P. 25 Advisory Committee Notes to 2002 Amendments.
Accordingly, under the plain and unambiguous terms of Rule 5(b)(2)(E), when Robinson’s lawyer informed the district court and Wix’s lawyers — by way of the Rule 59(e) motion- — of the failure of electronic service of the summary judgment papers, that notification defeated Wix’s attempted service of those papers.[13] The panel majority does not address this reality, nor does it acknowledge that application of the duty to monitor is diametrically opposed to the precepts of service and notice enshrined in the Civil Rules.
To justify its duty to monitor — which effectively transfers the burden of service from the movant’s lawyer to the recipient’s lawyer — the panel majority relies on the D.C. Circuit’s decision in Fox v. American Airlines, Inc., a materially distinguishable case. See 389 F.3d 1291 (D.C.Cir.2004). First, that decision primarily concerned whether the “straightforward application of [that circuit’s] Local Rule 7(b),” which treats unopposed motions as conceded, was an abuse of discretion. Id. at 1294. Second, more than a month after the defendant filed its motion to dismiss, the plaintiffs’ lawyer filed a “joint meet and confer statement and proposed scheduling order” referencing the “pending” motion to dismiss. Id. The D.C. Circuit emphasized that, in such circumstances, “it is difficult to understand how counsel did not recognize that the ‘pending’ motion to dismiss he repeatedly referenced ... related to *424 the amended complaint,” particularly because “his failure to receive a timely answer to the amended complaint [sjhould have aroused his suspicion.” Id. (emphasis omitted). Fox thus involved a vastly different scenario from the one presented here.
Exacerbating the difficulties attendant to the majority’s reliance on Fox is that the decision was largely predicated on concerns for docket management. See Fox, 389 F.3d at 1295 (“Requiring [the court] to provide notice, [and] an opportunity to explain and weigh alternatives before enforcing Rule 7(b) would hinder effective docket management.”). Yet, our Court has — until today- — traditionally adhered to the principle espoused by Judge Russell and his distinguished panel that “considerations of the need to expedite cases, to fully utilize the court’s time, to reduce overcrowded calendars and to establish finality of judgments should never be used to thwart the objectives of the blind goddess of justice itself.” Compton v. Alton S.S. Co., 608 F.2d 96, 103 (4th Cir.1979) (internal quotation marks and alteration omitted).
B.
The panel majority compounds the problematic nature of its duty to monitor in two important respects. First, it imputes such a duty to the client personally and, in so doing, disregards the malpractice implications thereof. Second, the majority devises this obligation in the absence of any corollary duties for movants’ lawyers and the courts.
1.
In imputing Robinson’s lawyer’s actions to Robinson personally, the panel majority erroneously relies upon readily distinguishable authorities. For instance, Gayle v. United Parcel Service concerned “whether attorney negligence justifies equitable tolling sufficient to excuse the lack of compliance with [an ERISA] plan’s appeal procedure.” 401 F.3d 222, 224 (4th Cir.2005). The issue presented in Gayle is, of course, very different from the inquiry here: whether to impute constructive service of summary judgment papers to Robinson, predicated solely on his lawyer’s failure to comply with the newly devised (but retroactive) duty to monitor.[14]
The Supreme Court’s decision in Link v. Wabash Railroad Co. — -a case regarding the dismissal of a lawsuit that had been pending for more than six years — is also readily distinguishable. See 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). Link’s lawyer did not attend a scheduled pretrial conference — despite full knowledge thereof — because he “was busy preparing papers to file with [another court].” Id. at 628, 82 S.Ct. 1386. Moreover, Link’s lawyer had a history of dilatory conduct. Id. at 634 n. 11, 82 S.Ct. 1386. Notably, in upholding dismissal, the Court explained that “the fundamental requirement of due process is an opportunity to be heard upon such notice and proceedings *425 as are adequate,” with adequacy correlated, in large part, to the knowledge the party has of the consequences of his conduct. Id. at 632, 82 S.Ct. 1386 (internal quotation marks omitted).[15] The Court then observed that each party “is considered to have notice of all facts, notice of which can be charged upon the attorney.” Id. at 634, 82 S.Ct. 1386 (internal quotation marks omitted).[16] Here, notice of Wix’s summary judgment papers cannot fairly “be charged upon the attorney” and there fore cannot be imputed to Robinson. Thus, the cautionary words of Justice Black in Link have much force:
[I]t is of very great importance to everyone in this country that we do not establish the practice of throwing litigants out of court without notice to them solely because they are credulous enough to entrust their cases to lawyers whose names are accredited as worthy and capable by their government. I fear that this case is not likely to stand out in the future as the best example of American justice.
Link, 370 U.S. at 649, 82 S.Ct. 1386 (Black, J., dissenting).
Rather than confronting these realities, the panel majority has itself “opted to engage in willful blindness” toward the adverse implications of its duty to monitor. See ante at 409. In so doing, it disregards the time-honored principles espoused by Judges Winter and Russell, effectively repudiating sub silentio the wisdom of those eminent jurists. Notably, except for the concurrence’s blithe statement that “[f]or practitioners in the legal profession, unlike those in some others, he who fails to pay attention may one day have to pay up,” ante at 414, the majority fails to address the malpractice implications of its duty to monitor.[17] As Judge Winter warned, the approach advocated by the majority “invariably penalized] the innocent and may let the guilty off seott-free.” Smith v. Bounds, 813 F.2d 1299, 1304 (4th Cir.1987) (internal quotation marks omitted). In addition to increasing the risk that the underlying tortfeasor will escape liability, the duty to monitor will increase the exposure of lawyers to malpractice liability. And it will, logically, also increase their malpractice insurance rates.[18] Moreover, it will *426 merely substitute — case-by-case'—one lawsuit for another, with the new lawsuit being the ex-client against his former lawyer. Judge Winter would surely be shocked by such a development. In short, application of the duty to monitor itself flouts “our longstanding tradition to secure the just, speedy, and inexpensive determination of every action and proceeding.” See ante at 411 n. 9 (internal quotation marks omitted).
2.
Finally, to the extent the panel majority deems it proper to craft (and retroactively apply) a new duty for recipient lawyers, it would be at least as appropriate to create corollary duties and obligations for moving attorneys and courts. For example, because the lawyer who filed the motion would necessarily be aware of both its filing and its unresolved nature, it would be as logical, if we were inventing rules outside the rulemaking process, to impose on the movant’s attorney the duty to file and serve some notice of ripeness when the deadline has passed without a response. Similarly, we could impose on the court an obligation to notify counsel prior to ruling on a dispositive motion to which no response has been interposed. Naturally, however, the proper approach for creating any such rules would be through the established procedures for amending the Civil Rules, which would ensure the prospective and evenhanded imposition of additional obligations on lawyers and the courts.
IV.
Contrary to the panel majority, I would rule that the district court abused its discretion in denying Robinson’s Rule 59(e) motion, specifically in failing to properly consider his assertion of a meritorious summary judgment defense. I also reject the duty to monitor sponsored and applied by the district court and the majority — a duty essential to their resolution of this case but antithetical to our notice-based adversarial system.
Accordingly, I would vacate the Order of Denial and remand for such other proceedings as may be appropriate.
I respectfully dissent.

. That neither Smith nor Compton involved Federal Rule of Civil Procedure 59(e) or a summary judgment award does not undermine the wise and longstanding principles enunciated therein. In this appeal, we are assessing one overarching issue: whether the district court properly considered Rule 59(e)’s concern for preventing manifest injustice. This issue implicates, in my humble view, the storied and time-honored wisdom of Judges Winter and Russell.

. The panel majority mentions various permutations of this duty, including (1) literally checking the court’s docket; and (2) contacting opposing counsel or the court to verify the status of the case.

. Notably, the panel majority simply ignores Federal Rule of Civil Procedure 5(b)(2)(E), which provides that electronic service "is not effective if the serving party learns that it did not reach the person to be served.” As explained below, this Rule mandated that Wix again attempt service after learning that Robinson had not received electronic service.

. In order to rule as it does, the majority emphasizes its view that the ethics rules on attorney diligence and competence justify the imposition of its duty to “check the court’s docket ... or contact the court and opposing counsel.” Ante at 408. This duty to monitor, as further explained below, runs counter to the Civil Rules (which always place the obligation of service on the movant) and requires the majority to engage in appellate factfinding (which contravenes a basic tenet of our legal system). Thus, I disagree with the majority’s use of the rules of ethics to justify its new duty to monitor, its beyond-the-rules doctrine of "constructive service,” and its appellate fact-finding.

. Pursuant to our circuit's so-called CODES-CO rule, the district court correctly construed Robinson’s motion as solely seeking Rule 59(e), and not Rule 60(b), relief. See MLC Auto., LLC v. Town of S. Pines, 532 F.3d 269, 277-78 (4th Cir.2008) (citing Dove v. CODESCO, 569 F.2d 807, 809 (4th Cir.1978)). Thus, the majority’s discussion on the appropriateness of Rule 60(b) relief is simply obiter dicta.

. In a similar fashion, the panel majority mischaracterizes the Order of Denial and engages in fact-finding regarding the district court’s CM/ECF system. See ante at 406-07, 407-08. No evidentiary hearing was ever conducted, nor was the CM/ECF system examined to determine whether a pertinent Notice of Electronic Filing was ever successfully transmitted. Cf. Am. Boat Co., Inc. v. Unknown Sunken Barge, 418 F.3d 910, 914 (8th Cir.2005) (recognizing need for evidentiary hearing on delivery of electronic notice); Dempster v. Dempster, 404 F.Supp.2d 445, 449-50 (E.D.N.Y.2005) (same). Importantly, the mere transmission, as opposed to receipt, *419 of such electronic notice is insufficient to accomplish service under the Civil Rules. See infra Part III.A.

. Compounding the problematic nature of the panel majority’s foray into fact-finding is the unsoundness of its determination that the "district court's implicit conclusion [was] that Appellant’s counsel opted to engage in willful blindness.” Ante at 409. The district court made no such implicit conclusion; rather, it explicitly ruled that his office’s "computer problems did not relieve [Robinson’s] counsel of his obligation to continue to monitor the docket in this case.” J.A. 183. This ruling, as well as the factual findings made by the district court, see ante at 407 n. 5, simply demonstrate that the district court concluded that Robinson's lawyer failed to comply with the new duty to monitor, not that he was willfully blind.

. The majority's position on this point is also strikingly ironic, given its assertion that Robinson waived his Rule 60(b) contention by not arguing it before the district court. See ante at 411 n. 10. The majority opinion nevertheless proceeds to address the merits of Robinson's Rule 60(b) contention, notwithstanding this purported waiver and the inescapable reality that the opinion’s Rule 60(b) assessment is purely dicta.

. The majority also misreads our Zinkand decision by claiming that "Zinkand presupposes as a threshold matter the determination that the reasons for noncompliance are compelling.” See ante at 410 n. 9. Contrary to the majority's view, in Zinkand "the district court was dealing with a situation where Zinkand's prior counsel apparently had simply refused to go forward with Zinkand's case.” 478 F.3d at 637. The Zinkand court explicitly acknowledged that the record only hinted at the reasons for this conduct, but — -“whatever the reason” for the failure — we did not reexamine the court’s decision to hear new evidence and additional legal argument. Id.

. Under our CODESCO rule, Robinson could not seek relief from the summary judgment award through Rule 60(b). Application of the CODESCO rule therefore heightened the necessity of factoring Robinson's assertion of a meritorious defense into the manifest injustice calculus.

.Additionally, the Order of Denial apparently misapprehended the role of the district court in sustaining the erroneous impression that no dispositive motions had been filed. By rescheduling the trial after the deadline for Robinson’s summary judgment response had passed, the court may have created the impression that the matter was progressing apace to trial, when in fact Robinson was overdue in his response. Notably, this rescheduling further undercuts the majority’s improper factual finding that Robinson's lawyer was somehow engaged in "willful blindness.” See ante at 409.

. As further explained below, the district court also abused its discretion by creating from whole cloth — and then applying retroactively — the new duty to monitor, an obligation the majority is willing to apply but not explicitly adopt. Accordingly, the district court made a separate and independent error of law when it created and applied this expansive monitoring obligation.

. Had Wix's lawyer mailed a courtesy copy of the summary judgment papers — which Robinson's lawyer asserts is the customary local practice — this entire debacle would have been avoided and, more importantly from Wix's perspective, service would have been accomplished. See Fed.R.Civ.P. 5(b)(2)(C). Nevertheless, as Wix’s lawyer chose electronic service only, his duty to serve — imposed on the movant under the Civil Rules (the majority’s contrary position notwithstanding) — was reanimated by Robinson's notification that such service had not been received.

. Meanwhile, Universal Film Exchanges, Inc. v. Lust involved a lawyer who, knowing that papers were only served on counsel of record, "deliberately chose not to enter an appearance, chose not to file an answer that would have made known to the court his client’s defense, and allowed [another lawyer] to continue on as [his client’s] sole counsel of record.” 479 F.2d 573, 575 (4th Cir.1973). Months after the plaintiff was awarded summary judgment against all defendants — on an unopposed motion — the non-record lawyer filed a motion for relief, which was denied because, inter alia, notice of the motion and judgment "were properly served on the only attorney who had entered an appearance for [the defendant].” Id. at 576. That situation is a far cry from this case, where the summary judgment papers were not served on any lawyer for Robinson.

. Notably, the Court’s decision in Link was premised in part on the availability of post-judgment relief as an "escape hatch.” See 370 U.S. at 632, 82 S.Ct. 1386. Ironically, the panel majority today imputes a lawyer's alleged failings to his client precisely to foreclose any post-judgment relief.

. Importantly, this explication completes the passage relied on by the majority, see ante at 409 (providing that a party cannot " 'avoid the consequences of the acts or omissions of this freely selected agent’ ” (quoting Link, 370 U.S. at 633-34, 82 S.Ct. 1386)).

. We have recognized that, in granting judgment against a litigant based on the failings of counsel, it is proper for the court to first take account of the availability of less severe sanctions, such as punishment imposed solely on the lawyer. See, e.g., Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp., 843 F.2d 808, 811 (4th Cir.1988) (observing that "the trial court may nonetheless impose other sanctions against the offending attorney, such as awarding the non-movant's costs and attorney’s fees”).

.An additional impact of the duty to monitor will be, of course, the expense of checking the dockets. Given the undefined parameters of this new duty, a lawyer would be well-advised to repeatedly check the docket of each case, notwithstanding the absence of any Notices of Electronic Filing. The Judicial Conference imposes charges for such endeavors. See Electronic Public Access Fee Schedule, http://pacer.psc.uscourts.gov/documents/ epa_feesched.pdf. As such, the duty to monitor will impose an untoward burden in time and money on lawyers — particularly sole practitioners, those in small firms, those who are not technologically sophisticated, and those with high-volume litigation practices. Such increased costs will also harm litigants, *426 who ultimately will be charged with the additional costs.