AGEE, Circuit Judge,
dissenting:
The majority correctly recites that we review only for clear error the district court’s dispositive factual finding that Williams’ failure to file the FBAR was not willful. Maj. Op. at 658-59. The majority also correctly notes the limited scope of review under that standard. Id. In my view, however, my colleagues in the majority do not adhere to that standard, instead substituting their judgment for the judgment of the district court. As appellate judges reviewing for clear error, we are bound by the standard of review and therefore I respectfully dissent.
We recently explained how circumscribed our review under the clear error standard must be:
“This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently.” Anderson v. Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). “If the district court’s account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.” Id. at 573-74, 105 S.Ct. 1504. “When findings are based on determinations regarding the credibility of witnesses,” we give “even greater deference to the trial court’s findings.” Id. at 575, 127 S.Ct. 2201.
United States v. Hall, 664 F.3d 456, 462 (4th Cir.2012). Applying this standard to the case at bar, I conclude the district court’s judgment should be affirmed.
*661 The majority opinion rightly points out that there is evidence supporting the conclusion that Williams’ failure to file the FBAR was willful, particularly if adopting the majority’s conclusion that a “willful violation” can include “willful blindness to the FBAR requirement” or “intentional ignorance.” Maj. Op. at 659. That evidence could have led a reasonable factfin-der to conclude that the violation was willful, as the majority believes.[1]
But there is also evidence supporting the opposite view. First, there is Williams’ direct testimony that he was unaware of the FBAR requirement in June 2001 (when it was supposed to be filed) and that he did not willfully (or recklessly) fail to file it. The district judge, who had the opportunity to observe Williams’ demeanor while testifying, expressly found that ‘Williams’ testimony that he only focused on the numerical calculations on the Form 1040 and otherwise relied on his accountants to fill out the remainder of the Form is credible_” J.A. 379.
Significantly, the district court also found that there was no objective incentive for Williams to continue to conceal the ALQI account in June 2001, because at that time he knew that the United States government had requested the ALQI accounts be frozen, and thus Williams knew the United States government knew about those accounts. As the district court reasoned, if Williams had known about the FBAR requirement, there would have been little incentive for him under those circumstances to refuse to comply with it as of June 2001.
Additional evidence supporting the district court’s finding includes the undisputed evidence that, after June 2001, Williams and his advisors began formal disclosures of the ALQI accounts, including the filing of amended income tax returns, but they did not backfile FBAR reports. These disclosures included direct disclosures of the ALQI accounts to the IRS in January 2002. The district court explained the significance of this disclosure to the IRS: “[tjhough made after the June 30, 2001” FBAR filing deadline, the disclosure “indicates to the Court that Williams continued to believe the assets . had already been disclosed. That is, it makes little sense for Williams to disclose the ALQI accounts merely six months after the deadline he supposedly willfully violated.” J.A. 378. This was a logical and supported finding for the district court to make on the record before it.
The district court’s decision was set forth in a detailed opinion that fully explained the evidence supporting its findings. Had I been sitting as the trier of fact in this bench trial, I may well have decided differently than did the district judge. But I cannot say that I am left with a “definite and firm conviction” that he was mistaken. Thus, I cannot agree with the majority that the Government has established clear error.
I also address briefly the two other grounds for reversal asserted by the United States and rejected by the district court: collateral estoppel and judicial es-toppel.[2] Specifically, the Government *662 points to Williams’ criminal conviction and, in particular, the language in his plea allo-cution, see Maj. Op. at 657, as requiring a finding that both types of estoppel apply. I disagree.
We review the district court’s denial of judicial estoppel only for abuse of discretion, see Jaffe v. Accredited Sur. & Cas. Co., 294 F.3d 584, 595 n. 7 (4th Cir.2002), and its denial of collateral estoppel de novo, Tuttle v. Arlington Cnty. Sch. Bd., 195 F.3d 698, 703 (4th Cir.1999).
Judicial estoppel generally requires three elements:
First, the party sought to be estopped must be seeking to adopt a position that is inconsistent with a stance taken in prior litigation. The position at issue must be one of fact as opposed to one of law or legal theory. Second, the prior inconsistent position must have been accepted by the court. Lastly, the party against whom judicial estoppel is to be applied must have intentionally misled the court to gain unfair advantage.
Zinkand v. Brown, 478 F.3d 634, 638 (4th Cir.2007) (citations and internal quotations omitted).
Similarly, a party seeking to apply collateral estoppel must establish five elements:
(1) the issue sought to be precluded is identical to one previously litigated; (2) the issue [was] actually determined in the prior proceeding; (3) determination of the issue [was] a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment [is] final and valid; and (5) the party against whom estoppel is asserted ... had a full and fair opportunity to litigate the issue in the previous forum.
Sedlack v. Braswell Servs. Grp., Inc., 134 F.3d 219, 224 (4th Cir.1998); Collins v. Pond Creek Mining Co., 468 F.3d 213, 217 (4th Cir.2006). “The doctrine ... may apply to issues litigated in a criminal case which a party seeks to relitigate in a subsequent civil proceedings.... [For example], a defendant is precluded from retrying issues necessary to his plea agreement in a later civil suit.” United States v. Wight, 839 F.2d 193, 196 (4th Cir.1987).
In my view, the district court correctly concluded that there remains a factual incongruence between those facts necessary to [Williams’] guilty plea to tax evasion and those establishing a willful violation of § 5314. That Williams intentionally failed to report income in an effort to evade income taxes is a separate matter from whether Williams specifically failed to comply with disclosure requirements contained in § 5314 applicable to the ALQI accounts for the year 2000.
J.A. 379. Put differently, Williams never allocuted to failing to file the FBAR form, and certainly did not admit willfully failing to file it. Neither his plea agreement nor his allocution even referred to the FBAR or § 5314. Indeed, the Treasury Department itself notes that the FBAR is a separate reporting requirement and not a tax return, nor is it to be attached to a taxpayer’s tax returns. See J.A. 225, 237, 246. In short, pleading guilty to hiding the existence of the two accounts for income tax purposes does not necessarily establish that Williams willfully failed to file a FBAR for 2000. Indeed, other separate and distinct tax penalties (including penalties for fraud) were separately sought by the IRS from Williams for his failure to report the income in the accounts, pursuant to 26 U.S.C. §§ 6662 and 6663. See Williams v. Comm’r of Internal Revenue, 97 T.C.M. (CCH) 1422, *4 (Apr. 16, 2009). *663 The FBAR-related penalty is not a tax penalty, but a separate penalty for separate conduct.
Thus, viewed as distinct issues, collateral estoppel is inapplicable here because Williams’ willfulness in failing to file the FBAR is not an issue “identical to one previously litigated.” Sedlack, 134 F.Sd at 224. Likewise, judicial estoppel is inapplicable because there is nothing about Williams’ stance on willfulness here that is “inconsistent with [the] stance taken” in his criminal proceedings. Zinkand, 478 F.3d at 638. Accordingly, I would further hold that the district court did not err in declining to apply either collateral estoppel or judicial estoppel.
For all of these reasons, I respectfully dissent and would affirm the judgment of the district court.

. Some of that evidence, of course, is subject to two interpretations. For example, the majority reasons that Williams’ reference in his allocution to the "Department of the Treasury” is necessarily an admission he violated § 5314. Because the IRS is a bureau of the Department of the Treasury, however, the reference in his plea could instead be interpreted as a simple acknowledgement of that fact. Indeed, there was no reference in the criminal proceedings to Section 5314 or the FBAR at all.

. In light of its holding that the district court clearly erred in finding the violation not willful, the majority did not have cause to address either estoppel argument. Because I would affirm the district court and the Government *662 contends that both types of estoppel prevent Williams from challenging the willfulness of his violation, it is necessary to address those points.